Dennis MARTEN, Plaintiff,

v.

YELLOW FREIGHT SYSTEM,
INC., Defendant.

Civil Action No. 96–2013–GTV.

United States District Court,
D. Kansas.

Jan. 13, 1998.

Paul F. Pautler, Jr., Kimberly A. Jones, Blackwell, Sanders, Matheny, Weary & Lombardi L.L.P., Gail M. Hudek, Hudek & Associates, P.C., Kansas City, MO, for Plaintiff.

Robert W. McKinley, Tedrick Addison Housh, III, Swanson, Midgley, Gangwere, Kitchin & McLarney, LLC, Kansas City, MO, for Defendant.

### MEMORANDUM AND ORDER

VAN BEBBER, Chief Judge.

Plaintiff brings this action alleging retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Plaintiff also asserts state law claims of outrage, defamation, false imprisonment, assault, and battery. The case is before the court on the following:

(1) Plaintiff's motion (Doc. 125) to reconsider the court's Order denying his motion to file a first amended complaint; and

(2) Defendant's motion (Doc. 92) for summary judgment.

Plaintiff's motion for reconsideration is denied. The court finds that plaintiff had adequate opportunity to amend his complaint between his original filing in January 1996 and the deadline for amendment in October 1996. The plaintiff is not required to wait until a motion deadline is established to file a motion to amend the complaint. Accordingly, his suggestion that he never could have amended the complaint is wrong. Moreover, whether the deadline was October 1, 1996 or October 1, 1997, plaintiff's motion filed on October 23, 1997 was untimely.

For the reasons set forth below, defendant's motion for summary judgment is granted on plaintiff's outrage, defamation, and false imprisonment claims and is denied on plaintiff's retaliation, assault, and battery claims.

### I. FACTUAL BACKGROUND

The following facts are either uncontroverted or are based on evidence submitted with summary judgment papers viewed in a light most favorable to the plaintiff. Immaterial facts and facts not properly supported by the record are omitted.

On September 20, 1993, defendant hired plaintiff as a part-time records clerk. Defendant promoted plaintiff to full-time tracing clerk in its records center on November 1, 1993 and, subsequently, to scanning specialist on February 14, 1994. Each promotion resulted in a pay raise for plaintiff. Plaintiff received an additional pay increase approximately one month after becoming a scanning specialist and again in the fall of 1994. Prior to the time he received his fall 1994 pay increase, plaintiff had not complained of discrimination.

Plaintiff claims that as a scanning specialist, his position was one of three lead

positions in the records center. As a lead person, plaintiff hired, trained, coordinated, supervised, and distributed work to temporary and irregular employees. Plaintiff alleges that shortly after promoting him to lead person, Gary Bowman, the manager of the records center, ordered plaintiff to engage in acts entailing race and gender discrimination against other employees. When plaintiff resisted, Bowman indicated that plaintiff's review was approaching.

Plaintiff complained about Bowman's race and gender discrimination to defendant's human resources employees, Dana Hiatt and Jackie Nelson, on November 11, 1994 and again when he met with Nelson, Hiatt, and Nile Glasebrook, Bowman's immediate supervisor, on November 18, 1994. Hiatt and Nelson indicated to Glasebrook that they had been aware of Bowman's conduct for over a year. Despite their prior knowledge and plaintiff's complaints, however, neither Hiatt, Nelson, nor Glasebrook investigated and Bowman received no counseling or discipline.

On November 19, 1994, plaintiff met with Glasebrook and Bowman regarding the complaints. Subsequently, Bowman warned plaintiff to bring his complaints directly to Bowman. Prior to November 1994, plaintiff never received counseling or discipline for performance problems. Plaintiff claims that, after the November 19 meeting, Bowman became cold and rude toward plaintiff, refused to answer his work-related questions, refused to give him administrative support, and excluded him from administrative meetings. After plaintiff complained, Bowman also began to keep a personal file on plaintiff and took copious notes of plaintiff's behavior, including whether plaintiff greeted Bowman in the morning. Bowman did not discuss the noted problems with plaintiff.

In January 1995, plaintiff attempted to notify Hiatt and Nelson that Bowman had been retaliating against him. Hiatt did not respond to plaintiff's call and Nelson denied any retaliation. On January 20, 1995, plaintiff told Glasebrook that Bowman retaliated against him for his complaints. Plaintiff contends that Glasebrook responded with support for Bowman, alleging plaintiff was insubordinate, and that Bowman indicated

plaintiff was not doing his job. No one investigated the complaint of retaliation at that time.

Plaintiff alleges that Bowman transferred him within the records center from his scanning specialist/lead position to the mail desk under Laree Hellwig and Nancy Stevens on January 24, 1995. The mail desk is a position of less prestige and responsibility than the scanning specialist position. Plaintiff was characterized on the work schedule as "mail preparation" personnel and no longer as a "scanner." On February 10, 1995, plaintiff notified Hellwig that he needed to leave work early. Hellwig granted plaintiff's request and offered to tell Bowman who was in a meeting at the time. The same day, plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC), alleging retaliation for making protected complaints. The next work day, on February 13, 1995, Bowman reprimanded plaintiff for not notifying him that he was leaving early and warned plaintiff that he would have plaintiff "taken care of" that afternoon. Plaintiff immediately contacted Cindy Karrow, the EEO coordinator in Human Resources, regarding Bowman's threat.

Karrow met with plaintiff on February 13 and 15 and discussed plaintiff's complaints and his EEOC charge. Karrow conducted a limited investigation, interviewing Bowman and four white women. During their interviews, all four women described incidents in which plaintiff had been disruptive in the workplace. At least two of the women, Hellwig and Jan Dahlgren, a scanning specialist/lead person, knew of plaintiff's complaints when they were interviewed.

The EEOC sent defendant a copy of plaintiff's charge on February 14, 1995. On February 22, 1995, Glasebrook and Karrow held a meeting with plaintiff "to bring closure to the matter." Plaintiff claims that Karrow stated that the persons interviewed substantiated his complaints but that he should stop complaining about discrimination and retaliation. After plaintiff refused and requested immediate action, plaintiff alleges that Glasebrook berated him and Karrow threatened to sue him for slander. Glasebrook got up from his chair, leaned over the plaintiff, and as the

plaintiff attempted to get up from his chair, Glasebrook's chest bumped plaintiff's shoulder. Plaintiff further contends that Glasebrook blocked plaintiff's path to the door, covered the doorknob with his hand, and told plaintiff to sit down. After plaintiff indicated several times his desire to leave, Karrow told him he could go and agreed to continue her investigation. Karrow interviewed two additional people; both were white and neither worked in the records center.

On March 3, 1995, Glasebrook, Bowman, and Mark Kilpatrick, a human resources employee, met with plaintiff. Bowman gave plaintiff a Notification of Corrective Action, reprimanding him for failing to communicate with co-workers and managers, refusing to cooperate with others, and spreading unsubstantiated rumors. Plaintiff claims that he had been communicative and cooperative, and did not spread unsubstantiated rumors. Neither Bowman nor Glasebrook had received any complaint about plaintiff's conduct, and Bowman had made no notes in his personal file of plaintiff since February 13, 1995.

Glasebrook then attempted to discuss the EEOC charge. After plaintiff indicated that he wanted the EEOC to handle the matter, Glasebrook became angry. Plaintiff asserts that when he reached for the doorknob, Glasebrook told him to stay and swung his fist at plaintiff's arm, knocking his hand away from the door. Plaintiff insisted on leaving and Glasebrook acquiesced. The next day, plaintiff signed and returned the Notification of Corrective Action, but noted on the document that he believed the action was in retaliation for his EEOC complaint.

Karrow resumed her investigation on April 24, 1995 and found evidence of discrimination and of plaintiff's disruptive behavior. On April 27, 1995, an Employee Review Committee convened and recommended plaintiff's dismissal. Bowman, Glasebrook, Kirkpatrick and Mike Griffin, a security officer, confronted plaintiff that day. Plaintiff alleges that Glasebrook had a pair of scissors in his hand. Plaintiff accepted his paycheck and suspension notice and left the premises.

Defendant terminated plaintiff's employment on May 1, 1995. After plaintiff's termi-

nation, Hellwig told Dahlgren and other co-workers that plaintiff resigned due to mental problems. Plaintiff amended his EEOC charge to include unlawful termination on May 10, 1995.

Plaintiff claims that defendant's treatment caused him to suffer extreme physical and emotional distress including anxiety, loss of concentration, depression, headaches, chest pains, sleeplessness, and stomach problems. As a result, plaintiff sought medical treatment in October 1995, August 1996, and March 1997. Further, plaintiff sought counseling with a psychologist several times between August 1995 and February 1996 and with his pastoral counselor from September 1995 through the present.

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

The party moving for summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson*, 477 U.S. at 256. "A party oppos-

ing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the party opposing the motion. *Bee v. Greaves,* 744 F.2d 1387, 1396 (10th Cir.1984).

### III. ANALYSIS

Defendant seeks summary judgment on the merits of each of plaintiff's claims. Defendant also asserts that the Kansas Workers Compensation Act precludes the state law claims.

#### A. Retaliation

Plaintiff claims that defendant retaliated against him for lodging internal complaints and for filing an EEOC complaint.

#### 1. Prima facie case

■ Plaintiff has the burden to show a prima facie case of retaliation under Title VII. *Berry v. Stevinson Chevrolet,* 74 F.3d 980, 985 (10th Cir.1996). To establish a prima facie case of retaliation, plaintiff must show that: (1) he engaged in protected opposition to discrimination; (2) he suffered adverse action from his employer; and (3) there was a causal connection between his protected activity and his employer's adverse action. *Id.*

■ Defendant does not dispute that plaintiff engaged in protected activities. Plaintiff first complained to defendant about discrimination in November 1994. Plaintiff then complained to defendant about retaliation in January 1995. On February 10, 1995, plaintiff filed an EEOC charge, alleging retaliation. Plaintiff continued to outwardly oppose discrimination and retaliation at least through March 4, 1995, when plaintiff returned his corrective action notice. Plaintiff provided sufficient evidence that he engaged in protected opposition to discrimination under Title VII.

Defendant contends that plaintiff suffered no adverse employment action. Plaintiff, however, submitted evidence that Bowman withdrew any administrative assistance or support from plaintiff and demoted him from a position with supervisory authority over temporary and irregular employees. Moreover, defendant terminated plaintiff's employment. The court finds this evidence of adverse employment actions sufficient to withstand summary judgment.

Defendant argues that plaintiff cannot show a causal relationship between his protected activity and the adverse employment action. "[P]rotected conduct closely followed by adverse action may justify an inference of retaliatory motive." *Marx v. Schnuck Markets, Inc.,* 76 F.3d 324, 329 (10th Cir.), *cert. denied,* 518 U.S. 1019, 116 S.Ct. 2552, 135 L.Ed.2d 1071 (1996). "[T]he phrase 'closely followed' must not be read too restrictively where the pattern of retaliatory conduct begins soon after the filing of the []complaint and only culminates later in actual discharge." *Id.; see also Conner v. Schnuck Markets, Inc.,* 121 F.3d 1390, 1395 (10th Cir. 1997) ("Unless the termination is very closely connected in time to the protected conduct, the plaintiff will need to rely on additional evidence beyond mere temporal proximity to establish causation.").

Plaintiff's evidence indicates that he continuously opposed defendants' discrimination from February 1994 through March 1995. As the gravity of plaintiff's opposition increased, so did the gravity of the retaliation. Days after plaintiff first complained in November 1994, Bowman withdrew administrative assistance and support and began keeping the personal file. Shortly after plaintiff complained of retaliation by Bowman, Bowman demoted him from the lead position to the mail desk and employed others to compile a negative record on plaintiff. After plaintiff filed his EEOC charge in February 1995, Glasebrook attempted to intimidate plaintiff into dropping his charge, Bowman issued the corrective action notice, and defendant terminated plaintiff's employment.

Plaintiff established a pattern of retaliatory conduct beginning immediately after plaintiff engaged in protected activity.

Moreover, plaintiff also offered evidence that Bowman, the alleged discriminator and retaliator, had a hand in all of the adverse employment actions plaintiff suffered. Plaintiff has offered sufficient evidence to create a genuine issue of material fact whether a causal connection exists between his protected activity and the adverse action.

### 2. Legitimate motive/pretext

■ Once plaintiff establishes a prima facie case, defendant has the burden to produce a legitimate, nonretaliatory reason for the adverse action. *Marx*, 76 F.3d at 327. If defendant articulates such a reason, plaintiff must demonstrate that defendant's proffered reasons are a mere pretext for retaliation. *Id.* Defendant asserts that its agents took all of the adverse actions against plaintiff because he was a disruptive force in the workplace. Plaintiff, however, submitted evidence that he was not disruptive in the workplace and other evidence that defendant's reason is pretextual.

As noted above, Bowman, who was plaintiff's supervisor and the alleged discriminator and retaliator, was integral in all of the adverse actions against plaintiff. Prior to plaintiff's first complaint about Bowman, plaintiff had risen up through the ranks from a part-time records clerk to a scanning specialist/lead person over the course of five months and he had never received counseling or discipline for performance problems. Plaintiff's complaints were met with hostility and denial. In response to plaintiff's complaint of race discrimination, defendant did not interview any minorities. Immediately after plaintiff first complained to defendant's human resources department, defendant began accumulating a negative record on plaintiff. Defendant's efforts culminated in plaintiff's termination within six months after plaintiff first complained of discrimination. Plaintiff has offered sufficient evidence to create a genuine issue of material fact whether defendant's proffered reason for its adverse actions against plaintiff are pretextual.

### B. Outrage

■ Plaintiff claims that defendant committed the tort of outrage. To establish a claim for outrage, plaintiff must show: (1) defendant acted intentionally or with reckless disregard of plaintiff; (2) the conduct is extreme and outrageous; (3) the conduct caused plaintiff to suffer mental distress; and (4) the mental distress is extreme and severe. *Roberts v. Saylor*, 230 Kan. 289, 292, 637 P.2d 1175 (1981). "Kansas courts have been reluctant to extend the outrage cause of action to discrimination and harassment claims." *Bolden v. PRC Inc.*, 43 F.3d 545, 554 (10th Cir.1994). Defendant contends that its conduct cannot reasonably be regarded as extreme and outrageous. The court agrees.

■ The extreme and outrageous conduct element requires "conduct so outrageous in character, and so extreme in degree, as to go beyond the bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.* at 293, 637 P.2d 1175. A person is "necessarily expected and required to be hardened to a certain amount of criticism, rough language and to occasional acts and words that are definitely inconsiderate and unkind." *Id.* The few cases surviving summary judgment on this issue have been those "involving repeated physical threats and racially or sexually abusive language." *Gillum v. Federal Home Loan Bank*, 970 F.Supp. 843, 854 (D.Kan. 1997). No such conduct occurred here.

■ Plaintiff's evidence indicates that after he complained about Bowman's conduct, Bowman and others ignored and ostracized plaintiff during the workday. Bowman threatened plaintiff's employment, withdrew all work-related support, and kept a personal file of plaintiff's actions. Glasebrook accused plaintiff of insubordination, refused to investigate plaintiff's complaints, attempted to intimidate plaintiff into dropping his allegations, and held a pair of scissors while telling plaintiff to leave after his employment was suspended. While reflecting an extremely poor approach to handling personnel problems, the conduct cannot be considered beyond the bounds of decency, or utterly intolerable in a civilized society.

## C. Defamation

■ Plaintiff also asserts a claim for defamation. Defamation claims are subject to a heightened-pleading standard. "To effectively plead a defamation claim under Kansas law, a plaintiff must set forth the alleged defamatory words published, the names of those persons to whom they were published and the time and place of their publication." *Classic Communications, Inc. v. Rural Tel. Serv.*, 956 F.Supp. 910, 920 (D.Kan.1997). Plaintiff stated in his complaint that defendant's agents made statements to plaintiff's co-workers that plaintiff "voluntarily resigned his employment because of 'mental problems.'" Plaintiff, however, in his response to defendant's motion for summary judgment, contends that other statements by defendant's agent constitute defamation.

■ A claim not raised in the complaint and initially asserted in a response to a summary judgment motion is not properly before the court. *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990); *see also Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090–91 (10th Cir.1991) (holding that the general liberalized pleading rules do not allow last-minute changes in the plaintiff's theories). Accordingly, the court will not consider the newly asserted statements.

■ Defendant seeks summary judgment on the properly plead defamation claim. To establish a claim of defamation, plaintiff must show: (1) false and defamatory words; (2) communicated to a third person; and (3) causing harm to the reputation of plaintiff. *Luttrell v. United Tel. Sys.*, 9 Kan.App.2d 620, 620–21, 683 P.2d 1292 (1984), *aff'd*, 236 Kan. 710, 695 P.2d 1279 (1985). Defendant contends that plaintiff fails to show any harm to plaintiff's reputation. The court agrees.

■ "The plaintiff must show how his or her true reputation in the community of his or her residence has been affected." *Lindemuth v. Goodyear Tire and Rubber Co.*, 19 Kan.App.2d 95, 103, 864 P.2d 744 (1993). Plaintiff asserts that defendant's agents commented to plaintiff's co-workers that he voluntarily resigned because he was suffering mental problems. Plaintiff's evidence indicates that they were made after plaintiff's termination. Thus, his termination does not constitute proof of harm to plaintiff's reputation. Plaintiff submitted no evidence that the comments otherwise injured his reputation. Accordingly, summary judgment is granted on the defamation claim.

## D. False Imprisonment

■ Plaintiff next claims that defendant subjected him to false imprisonment. To establish a claim of false imprisonment, plaintiff must show that he was "restrained of his liberty without any sufficient legal cause therefor, and by words or acts which the one being restrained fears to disregard." *Thompson v. General Finance Co.*, 205 Kan. 76, 88, 468 P.2d 269 (1970).

> Further, it is recognized that a person must be held against their [sic] will. "[I]f one agrees of one's own free choice to surrender freedom of motion, as by remaining in a room or accompanying another voluntarily, to clear oneself of suspicion or to accommodate the desires of the other, rather than yielding to the constraint of a threat, then there is no imprisonment."

*Wright v. Montgomery Ward & Co.*, 814 F.Supp. 986, 989 (D.Kan.1993) (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 11, at 49 (5th ed.1984)), *aff'd*, 25 F.3d 1059 (10th Cir.1994) (Table). Plaintiff need not show actual physical restraint "if words and conduct induce reasonable apprehension that resistance or attempted flight would be futile." *Munsell v. Ideal Food Stores*, 208 Kan. 909, 925, 494 P.2d 1063 (1972). Plaintiff argues that during the meetings on February 22 and March 3, 1997, defendant's agents falsely imprisoned him. The court disagrees.

■ During the February 22, 1995 meeting, plaintiff voluntarily came to the meeting with Glasebrook and Karrow. The hostility began when plaintiff refused to discontinue complaining about discrimination and retaliation, not when plaintiff decided to leave the meeting. Karrow threatened legal action if plaintiff continued to complain about discrimination, not if he left the meeting. Plaintiff's evidence indicates that Glasebrook leaned over the plaintiff in an effort to intimidate him into discontinuing the allegations, not to

make him stay in the room. Moreover, the evidence illustrates that the alleged bump was incidental. No one physically restrained plaintiff from leaving the meeting.

Although Glasebrook blocked plaintiff's path to the door and covered the doorknob with his hand, such conduct is insufficient to create a reasonable apprehension that resistance was futile. Plaintiff's own conduct indicates that he did not think resistance was futile because he asked to leave and Karrow told him that he could leave. The only reasonable apprehension may have been that if he left, he would lose his job, but such fear is not an adequate basis for a false imprisonment claim. Otherwise, virtually every time an employer called an employee into the office, a cause of action for false imprisonment would arise.

■ Nor does the March 3, 1995 incident when plaintiff met with Glasebrook, Bowman, and Kilpatrick constitute false imprisonment. Glasebrook became angry when plaintiff refused to discuss the EEOC charge, not because he wanted to leave. Although Glasebrook knocked plaintiff's hand away from the door with his fist, Glasebrook allowed him to leave when plaintiff stood his ground. Such conduct did not constitute physical restraint. Plaintiff's conduct again belies his claim of false imprisonment. Immediately after the conduct that plaintiff claims caused apprehension that resistance was futile, plaintiff asserted himself and left the meeting.

Plaintiff failed to submit evidence to create a genuine issue of material fact whether either meeting involved physical restraint or reasonable apprehension that resistance was futile. Accordingly, summary judgment is granted on the false imprisonment claim.

### E. Assault/Battery

■ Plaintiff asserts claims for assault and battery. "To prove assault, plaintiff must show an intentional threat or attempt, coupled with apparent ability, to do bodily harm to another, resulting in immediate apprehension of bodily harm. No bodily contact is necessary ... [but w]ords do not make the actor liable for assault unless together with other acts or circumstances they put the other in reasonable apprehension of imminent harmful or offensive contact with his person." *Taiwo v. Vu*, 249 Kan. 585, 596, 822 P.2d 1024 (1991). Plaintiff need not show fear of being beaten or severely injured. *Id.* "To prove battery, plaintiff must show an unprivileged touching or striking, done with the intent of bringing about either a contact or an apprehension of a contact that is harmful or offensive." *Daniels v. Dillard Dept. Stores, Inc.*, 881 F.Supp. 505, 510–11 (D.Kan.1995).

■ Defendant contends that plaintiff fails to support a claim for assault or battery because there was no physical contact or reasonable apprehension of imminent harmful or offensive bodily contact. The court disagrees. Plaintiff submitted evidence that Glasebrook, while berating plaintiff for not discussing the EEOC charge, swung his fist and hit plaintiff in the arm, knocking his hand away from the door. Moreover, plaintiff submitted sufficient evidence to indicate that the actions constituted offensive contact. Accordingly, summary judgment is denied on the assault and battery claims.

### F. Kansas Workers Compensation Act

Defendant contends that plaintiff's state law claims are precluded by the Kansas Workers Compensation Act. The Act provides that "[e]xcept as provided in the workers compensation act, no employer, or other employee of such employer, shall be liable for any injury for which compensation is recoverable under the workers compensation act." K.S.A. 44–501(b) (Supp.1996).

■ Compensable personal injuries under the Act include physical injuries and any emotional distress directly related to or stemming from physical injuries occurring in the course of employment. *See* K.S.A. 44–501(a); *Beam v. Concord Hospitality, Inc.*, 873 F.Supp. 491, 500 (D.Kan.1994). "If the essence of the tort, in law, is non-physical, and if the injuries are of the usual nonphysical sort, with physical injury being at most added to the list of injuries as a make weight, the suit should not be barred." *Gallardo v. Board of County Commissioners, Kearny County, Kansas*, 885 F.Supp. 236, 237 (D.Kan.1995) (quoting 2A Larson, *Law of*

*Workermen's Compensation* § 64.45(a), at 13–180 (1993)).

Plaintiff alleges emotional distress as his primary injury. Although plaintiff also alleges that he suffered headaches, stomach problems, and chest pain, those injuries are physical manifestations of the emotional distress, not the cause of the emotional distress. It is apparent from the complaint and the evidence submitted in response to the instant motion that plaintiff seeks compensation for non-physical injuries. Accordingly, the court holds that the Kansas Workers Compensation Act does not preclude plaintiff's state law claims.

IT IS, THEREFORE, BY THE COURT ORDERED that plaintiff's motion for reconsideration (Doc. 125) is denied.

IT IS FURTHER ORDERED that defendant's motion (Doc. 92) for summary judgment is granted on the outrage, defamation, and false imprisonment claims, and denied on the retaliation, assault, and battery claims.

**IT IS SO ORDERED.**