(864 P.2d 744)
No. 69,604

KENT D. LINDEMUTH, *Appellant,* v. THE GOODYEAR TIRE AND RUBBER COMPANY, *Appellee.*

Opinion filed December 10, 1993.

R. E. *Ramcharan,* of Topeka, for appellant.

*William G. Haynes,* of Frieden, Haynes & Forbes, of Topeka, for appellee.

Before GERNON, P.J., LEWIS, J., and GERALD T. ELLIOTT, District Judge, assigned.

GERNON, J.: Kent D. Lindemuth appeals from a district court ruling which granted summary judgment to his former employer, Goodyear Tire and Rubber Company (Goodyear). The district court held that Lindemuth failed to allege sufficient facts to support the tort of outrage and that other incidents complained of by Lindemuth were not defamatory as a matter of law. The district court also held that the majority of Lindemuth's claims involving his discharge from Goodyear were preempted by § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185(a) (1988).

The issues we must resolve on appeal are: (1) whether federal law preempted certain tort claims which might otherwise be cognizable under state law under the facts presented here, (2) whether Goodyear's conduct rose to the level of the tort of outrage as a matter of law, and (3) whether certain materials and statements were defamatory as a matter of law and, if so, whether they were subject to a qualified privilege.

## FACTS

Lindemuth was employed by Goodyear from 1970 until 1990, when he was terminated for allegedly stealing company tools. Lindemuth, a member of the collective bargaining unit represented by United Rubber, Cork, Linoleum and Plastic Workers of America, AFL-CIO Local No. 307, (Union) filed a grievance pursuant to the terms of a collective bargaining agreement. An arbitrator sustained Lindemuth's grievance, finding that Lindemuth's discharge was based upon unpersuasive, circumstantial evidence, and ordered that he be reinstated to his former position with all back pay and benefits.

Lindemuth never returned to work. He claimed that Goodyear, by its actions in investigating and terminating him, had created a climate within the plant in which both management personnel and other employees considered him a thief.

In February of 1991, Lindemuth filed suit against Goodyear, alleging intentional infliction of emotional distress and defamation. He later amended the petition to include the tort of outrage and tortious interference with a contract Lindemuth alleges he had with a local merchant.

The particulars of Lindemuth's complaints need not be repeated here except to note that they included alleged comments about him, contacts with a local hardware store manager, the placing of a cartoon on a bulletin board, remarks referring to Lindemuth over the plant public address system, and references to supposedly confidential information concerning psychiatric treatment Lindemuth may have received.

The district court granted Goodyear summary judgment on most issues raised by both sides. The court denied summary judgment on two issues because of unresolved material facts, those being whether a statement made by a Goodyear supervisor to another Goodyear employee was privileged and whether Goodyear disseminated private medical information concerning Lindemuth which was confidential.

For reasons unknown to this court, Lindemuth voluntarily dismissed his remaining claim of defamation against Goodyear and declined to amend his petition as instructed by the court to include the claim for dissemination of private information. Therefore, those matters need not be addressed either by this court or the trial court.

## FEDERAL PREEMPTION

The district court granted Goodyear summary judgment on the majority of Lindemuth's claims on the ground that they were preempted by § 301 of the Labor Management Relations Act of 1947, which provides:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

Section 301 provides federal jurisdiction for controversies involving collective bargaining agreements and authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements. *Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 403, 100 L. Ed. 2d 410, 108 S. Ct. 1877 (1988); *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451, 1 L. Ed. 2d 972, 77 S. Ct. 912 (1957). Section 301

mandates resort to federal rules in order "to ensure uniform interpretation of collective bargaining agreements, and thus to promote the peaceable, consistent resolution of labor-management disputes." *Lingle,* 486 U.S. at 404.

The general rule developed by the United States Supreme Court regarding when federal preemption is necessary in this context is as follows:

"[I]f the resolution of a state-law claim depends upon the meaning of a collective bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles—necessarily uniform throughout the Nation—must be employed to resolve the dispute." *Lingle,* 486 U.S. at 405-06.

See *Allis-Chalmers Corp. v. Lueck,* 471 U.S. 202, 220, 85 L. Ed. 2d 206, 105 S. Ct. 1904 (1985); *Teamsters Local v. Lucas Flour Co.,* 369 U.S. 95, 103-04, 7 L. Ed. 2d 593, 82 S. Ct. 571 (1962). In other words, when resolution of a state law claim is "substantially dependent" upon analysis of the terms of a collective bargaining agreement, the state claim must either be treated as a § 301 claim or dismissed as preempted by federal law. *Allis-Chalmers Corp.,* 471 U.S. at 220.

Lindemuth argues that § 301 preemption does not apply to the conduct at issue because adjudication of his claims cannot meaningfully be said to require interpretation of provisions of the collective bargaining agreement. We agree.

Our reading of the cases presented by both sides and the record here leads us to conclude that § 301 is designed to protect statements made at conferences and bargaining sessions pursuant to negotiations between labor and management and in grievance proceedings. Generally, "statements made in grievance proceedings are unqualifiedly, or absolutely, privileged." *Hull v. Central Transport, Inc.,* 628 F. Supp. 784, 791 (N.D. Ind. 1986).

Here, giving Lindemuth the benefit of viewing his allegations favorably, it was the actions of management and others prior to any grievance procedure which gave rise to the allegations made by Lindemuth. None of the statements made by or attributed to Goodyear of which Lindemuth complains appear to be made during grievance or disciplinary proceedings.

Finally, we reject any conclusion that Lindemuth's claim of intentional infliction of emotional distress could be considered preempted by an absolute privilege held by Goodyear. The trial court here did not expressly state which causes of action were barred by absolute privilege. This makes meaningful review more difficult.

The essence of preemption of § 301 of the LMRA is the need for uniformity in labor contract interpretation and that, if the resolution of the state tort claim depends upon reference to the labor contract, the tort claim will be preempted. *Coleman v. Safeway Stores, Inc.*, 242 Kan. 804, 811, 752 P.2d 645 (1988).

No part of the collective bargaining agreement has been made part of the record here, and Goodyear fails to address which specific terms or language will be subject to interpretation should a state court hear Lindemuth's claims. When the relevant question is whether Lindemuth's claims turn on an interpretation of the collective bargaining agreement and the agreement is all but ignored by the parties, the logical conclusion is that Lindemuth's claims operate independently of the contract.

The issue of preemption is a question of law. Therefore, this court has de novo review. *Gillespie v. Seymour*, 250 Kan. 123, 129, 823 P.2d 782 (1991).

It is our conclusion that the district court's holding which preempted Lindemuth's state claims of intentional infliction of emotional distress, defamation, and tortious interference with a contract must be reversed and remanded for further proceedings. It is unclear from our reading of the journal entry as to which claims the court held to be preempted by § 301 and which it held are "preempted" under the absolute privilege doctrine. Therefore, this matter is remanded for further proceedings consistent with our holdings on this issue.

## OUTRAGEOUS CONDUCT

Lindemuth argues that he was the target of a course of conduct, extending over a period of time, in which Goodyear abused the grievance procedure for its own malicious ends. He contends that Goodyear, acting through its agents and employees, embarked upon a campaign to make it impossible for him to return to work after he was ordered to be reinstated.

Kansas courts have defined the tort of outrage as follows:

"One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress. [Citations omitted.] Proof of four elements is required to establish the cause of action: (1) The conduct of defendant must be intentional or in reckless disregard of plaintiff; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between defendant's conduct and plaintiff's mental distress; and (4) plaintiff's mental distress must be extreme and severe.

"Liability for extreme emotional distress has two threshold requirements which must be met and which the court must, in the first instance, determine: (1) Whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it." *Roberts v. Saylor*, 230 Kan. 289, 292-93, 637 P.2d 1175 (1981).

See *Dawson v. Associates Financial Services Co.*, 215 Kan. 814, 529 P.2d 104 (1974) (tort of outrage first recognized by Kansas courts); Restatement (Second) of Torts § 46(1) (1964). "No bodily harm to the plaintiff is required to support such an action." *Roberts*, 230 Kan. at 292.

Several Kansas cases have considered whether certain alleged conduct rises to the level of extreme and outrageous to support the tort of outrage. In the most recent case, *Taiwo v. Vu*, 249 Kan. 585, 593, 822 P.2d 1024 (1991), the Kansas Supreme Court held that the conduct at issue raised a jury question as to whether reasonable people could regard the defendant's behavior as "atrocious and utterly intolerable in a civilized society."

The overwhelming majority of Kansas cases have held in favor of defendants on the outrage issue, finding that the alleged conduct was insufficiently "outrageous" to support the cause of action. *Moore v. State Bank of Burden*, 240 Kan. 382, 388, 729 P.2d 1205 (1986), *cert. denied* 482 U.S. 906 (1987) (bank erroneously set off funds against a legitimate indebtedness owed to bank); *Burgess v. Perdue*, 239 Kan. 473, 475, 721 P.2d 239 (1986) (doctor phoned mother after son's death to tell her she " 'had her son's brain in a jar.' "); *Roberts v. Saylor*, 230 Kan. at 295 (doctor expressed dislike of a patient to that patient prior to patient undergoing surgery); *Gomez v. Hug*, 7 Kan. App. 2d 603, 604, 645 P.2d 916, *rev. denied* 231 Kan. 800 (1982) (employer verbally

accosted employee with racial slurs and insults during 15-minute tirade); *Henderson v. Ripperger*, 3 Kan. App. 2d 303, 303-04, 594 P.2d 251 (1979) (waitress falsely accused patron of leaving without paying in front of other customers); *Bradshaw v. Swagerty*, 1 Kan. App. 2d 213, 216, 563 P.2d 511 (1977) (racial epithets were " 'mere insults' of the kind which must be tolerated in our rough-edged society.").

The district court found that "[e]ven if the court were to conclude that these acts were done intentionally and that plaintiff suffered severe emotional distress as a result, the court could not find that the conduct complained of was extreme and outrageous."

In *Roberts v. Saylor*, 230 Kan. at 293, the Kansas Supreme Court said that conduct which amounts to "mere insults, indignities, threats, annoyances, petty expressions, or other trivialities" does not rise to the level of outrageous conduct. The court there also said: "Members of the public are necessarily expected and required to be hardened to a certain amount of criticism, rough language and to occasional acts and words that are definitely inconsiderate and unkind." 230 Kan. at 293. We conclude the district's court ruling on the issue of whether the conduct of Goodyear was outrageous is correct and should be affirmed.

## IF MATERIALS AND STATEMENTS WERE DEFAMATORY, WERE THEY SUBJECT TO A QUALIFIED PRIVILEGE?

Lindemuth argues that Goodyear is liable, through respondeat superior, for several allegedly defamatory incidents, including statements made by supervisors and employees, the posting of various materials on bulletin boards, and comments made over Goodyear's public address system.

When the trial court found that the incidents involving comments by Goodyear's other employees and supervisors were preempted, it only considered whether the materials on the bulletin boards and the comments made on the paging system were defamatory as a matter of law. We note further that the details concerning the conversations remain controverted, and, therefore, summary judgment as to whether these incidents were defamatory would be premature.

The district court held that two "cartoons," the letter requesting the location of lost tools, and statements made over the paging system were not defamatory as a matter of law.

"The tort of defamation includes both libel and slander. The elements of the wrong include false and defamatory words [citation omitted] communicated to a third person [citation omitted] which result in harm to the reputation of the person defamed. [Citation omitted.] A corporation may be liable for the defamatory utterances of its agent which are made while acting within the scope of his authority. *Bourn v. State Bank*, 116 Kan. 231, 235, 226 Pac. 769 (1924)." *Luttrell v. United Telephone System, Inc.*, 9 Kan. App. 2d 620, 620-21, 683 P.2d 1292 (1984), *aff'd* 236 Kan. 710, 695 P.2d 1279 (1985).

Employees are allowed a qualified privilege which extends protection to certain comments made within a work situation. *Luttrell*, 9 Kan. App. 2d at 622.

"A communication is qualifiedly privileged if it is made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a duty, if it is made to a person having a corresponding interest or duty. The essential elements of a qualifiedly privileged communication are good faith, an interest to be upheld, a statement limited in its scope to the upholding of such interest and publication in a proper manner only to proper parties." *Luttrell*, 9 Kan. App. 2d at 622.

The *Luttrell* court further stated: "We conclude that remarks communicated by one corporate employee to another concerning the job performance of a third employee are publication for the purposes of a defamation action against the employer." *Luttrell*, 9 Kan. App. 2d at 623.

When a conditional or qualified privilege exists, a plaintiff must demonstrate actual malice, requiring the plaintiff to prove that the publication was made with knowledge that the defamatory statement was false or was made with reckless disregard of whether it was false or not. See *Dobbyn v. Nelson*, 2 Kan. App. 2d 358, 360, 579 P.2d 721, *aff'd* 225 Kan. 56, 587 P.2d 315 (1978).

We are next led to the case of *Turner v. Halliburton Co.*, 240 Kan. 1, 10, 722 P.2d 1106 (1986), wherein the court held that "[e]mployee conduct, particularly involving theft, is a matter within the bounds of the qualified privilege pertaining to communications within the company." However, all of the company personnel in *Turner* who testified to having knowledge of the

communications were shown to be managerial level employees with an interest in the event. 240 Kan. at 10. In the case before us, no management personnel were alleged to have been involved in posting any materials on the bulletin board or in abusing the paging system.

The trial court found that the posted materials and the comments over the paging system were not defamatory as a matter of law, since they failed to contain all the elements of defamation. The trial court stated that defamation was defined as *"maliciously* communicating to a person false information tending to expose another to public hatred, contempt or ridicule," citing PIK Civ. 2d 14.51. The trial court then stated that there was no evidence in the record to show that the acts complained of were done out of malice.

PIK Civ. 2d 14.51 (1992 Supp.) presently provides in relevant part: "Defamation is [communicating] to a person false information tending (to expose another living person to public hatred, contempt or ridicule) . . . ." We note that PIK Civ. 2d 14.51 (1992 Supp.) has removed the element of malice in recognition of Kansas appellate decisions which hold that malice depends upon factual circumstances such as the status of the plaintiff, the status of the defendant, and the subject of the communication. The trial court erred in finding malice was a necessary element Lindemuth was required to prove without first deciding whether such proof was required based upon the particular facts of the case.

Finally, the trial court held that the materials and comments were not defamatory as a matter of law because they did not expose Lindemuth to public hatred, contempt, or ridicule. Obviously, the materials and comments were designed to poke fun at Lindemuth and hold him up to a certain amount of contempt and ridicule. However, injury to one's sensitivities alone is not enough to support a claim for defamation. The plaintiff must show how his or her true reputation in the community of his or her residence has been affected. See *Gobin v. Globe Publishing Co.*, 232 Kan. 1, 7, 649 P.2d 1239 (1982).

Here, the record before us is devoid of evidence of the nature which would show how Lindemuth's reputation in the community of his residence has been affected. Given this, we must conclude

that the trial court properly granted summary judgment on this issue.

These matters are remanded for further findings consistent with this opinion, focusing on our reversal of the court's finding that § 301 and/or absolute privilege preempted Lindemuth's claims of intentional infliction of emotional distress, tortious interference with contract, and defamation.

All other issues and findings of the trial court are affirmed.