**Leonard HOLDREN, Plaintiff,**

v.

**GENERAL MOTORS CORP. and Kenny White, Defendants.**

**No. 97–2538–JWL.**

United States District Court,
D. Kansas.

Oct. 19, 1998.

Gregory Leyh, Humphrey, Farrington & McClain, Independence, MO, James T. Madison, Kansas City, MO, for Leonard Holdren.

Robert J. Harrop, David C. Vogel, Rosalee M. McNamara, Lathrop & Gage L.C., Kansas City, MO, for General Motors Corporation, Kenny White.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiff Leonard Holdren filed suit against defendant General Motors Corporation alleging violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., arising out of his employment with Gen-

eral Motors. Plaintiff also asserts several common law claims against his supervisor, defendant Kenny White, including intentional infliction of emotional distress, negligent infliction of emotional distress and battery. Finally, plaintiff asserts a vicarious liability claim against defendant General Motors for the torts allegedly committed by defendant Kenny White.[1]

This matter is presently before the court on defendants' motion for summary judgment on all of plaintiff's common law tort claims (doc. # 70). For the reasons set forth below, defendants' motion is granted in its entirety and plaintiff's tort claims are dismissed.[2]

## I. Facts [3]

Plaintiff Leonard Holdren began his employment with defendant General Motors Corporation in October 1959 at defendant's Leeds facility in Kansas City, Missouri. In 1988, plaintiff transferred to defendant's plant in Lansing, Michigan. Six years later, in 1994, plaintiff transferred to defendant's Fairfax plant in Kansas City, Kansas.

At the Fairfax plant, plaintiff was first employed as a superintendent of the trim shop. In defendant's corporate hierarchy, a superintendent is an eighth-level salaried employee with responsibility for an entire process segment and with supervisory responsibility over sixth- and seventh-level management employees. Superintendents, in turn, report to an Area Manager, who is responsible for an entire department. In July 1995, plaintiff transferred to the paint area as a superintendent. At some point during the next year, plaintiff temporarily moved to work in final process.

In April 1996, defendant Kenny White became paint Area Manager at the Fairfax plant. Three months later, plaintiff transferred back to the paint area and began reporting directly to Mr. White. According to plaintiff, Mr. White pressured him to discipline, demote or discharge several paint department supervisors who reported to plaintiff, most of whom were over the age of forty. Plaintiff refused to follow Mr. White's instructions.

On March 14, 1997, Mr. White placed plaintiff on an informal Performance Improvement Plan (PIP). According to plaintiff, at the time Mr. White placed him on the PIP, he told him that he would not successfully complete the PIP. On May 1, 1997, plaintiff was placed on a formal PIP, which set forth specific objectives with respect to plaintiff's performance. Plaintiff was informed that if he did not complete the objectives set forth in his PIP, his employment would be terminated.

Later in May 1997, plaintiff fell and injured his knee. Over the next several months, plaintiff was either on leave or performing light duty assignments. During this time, plaintiff was not performing his duties as a superintendent in the paint department. In late September 1997, defendant's personnel director informed plaintiff that management had determined that he would be unable to successfully complete the PIP and that he would be demoted and would lose his company vehicle upon his return to active duty.

On the first day plaintiff returned to work from sick leave, and on other occasions thereafter, plaintiff encountered Mr. White in the Fairfax plant. On these occasions, plaintiff claims that Mr. White said to him, "How are you doing, buddy?" or "How are you doing, old buddy?" while placing his hands on plaintiff's back or lightly tapping him with a single sheet of rolled-up paper. According to plaintiff, these encounters were humiliating and degrading.

---

1. Plaintiff initially asserted a negligence claim against General Motors based on its alleged failure to train and supervise defendant Kenny White, as well as a loss of consortium claim against both defendants. Plaintiff failed to address either of these claims in his papers, however, and, thus, has apparently abandoned these claims. Accordingly, defendants' motion for summary judgment with respect to these claims is granted.

2. Defendant General Motors has filed a separate motion for summary judgment on plaintiff's ADEA claims. This motion is not yet ripe for the court's ruling. When it is, the court will issue a separate order with respect to plaintiff's ADEA claims against defendant General Motors.

3. In accordance with the applicable summary judgment standard, the facts are uncontroverted or related in the light most favorable to plaintiff.

Plaintiff claims that he has suffered emotional distress and physical injuries as a result of negligent or intentional tortious conduct by defendants.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Intentional Infliction of Emotional Distress

■ Plaintiff claims that defendant Kenny White's actions constitute intentional infliction of emotional distress. In support of his claim, plaintiff asserts that Mr. White engaged in a "campaign of coercion, intimidation and pressure" against plaintiff. Specifically, plaintiff highlights Mr. White's directive that plaintiff target older employees for forced retirement or discharge. Plaintiff also claims that he was set up for failure when Mr. White placed him on a PIP that was impossible to complete and ultimately led to his demotion after thirty-eight years of employment. In support of his motion for summary judgment, Kenny White maintains that plaintiff has not shown that Mr. White's conduct was outrageous or that he has suffered the requisite emotional distress. As set forth below, even assuming that plaintiff's emotional distress was sufficiently severe, plaintiff has not set forth sufficient evidence from which a reasonable jury could conclude that defendant Kenny White intentionally inflicted emotional distress upon plaintiff. Thus, summary judgment in favor of defendant Kenny White is appropriate on plaintiff's intentional infliction of emotional distress claim.

■ As this court has previously noted, Kansas has set a very high standard for the common law tort of intentional infliction of emotional distress or, as it is sometimes referred to, the tort of outrage. *Butler v. City of Prairie Village*, 974 F.Supp. 1386, 1406 (D.Kan.1997). Moreover, "Kansas courts have been reluctant to extend the outrage cause of action to discrimination and harass-

ment claims." *Bolden v. PRC Inc.*, 43 F.3d 545, 554 (10th Cir.1994). To establish a prima facie case of intentional infliction of emotional distress, plaintiff must show that (1) defendant's conduct was intentional or in reckless disregard of plaintiff; (2) defendant's conduct was extreme and outrageous; (3) there is a causal connection between defendant's conduct and plaintiff's mental distress; and (4) plaintiff's mental distress is extreme and severe. *Id.* at 553 (citing *Moore v. State Bank of Burden*, 240 Kan. 382, 388, 729 P.2d 1205 (1986)); *Smith v. Welch*, 265 Kan. 868, 967 P.2d 727, 733 (1998). Under Kansas law, liability for emotional distress has two threshold requirements. To resolve a motion for summary judgment on an emotional distress claim, the court must determine: (1) Whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery; and (2) whether the emotional distress suffered by plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it. *Penry v. Federal Home Loan Bank*, 155 F.3d 1257, 1264 (10th Cir.1998) (citing *Lindemuth v. Goodyear Tire & Rubber Co.*, 19 Kan.App.2d 95, 864 P.2d 744 (1993) (quoting *Roberts v. Saylor*, 230 Kan. 289, 292–93, 637 P.2d 1175 (1981))); *Welch*, 265 Kan. at ——, 967 P.2d 727, 732.

As described above, plaintiff's claim stems from Mr. White's alleged effort to rid the workplace of older employees by pressuring plaintiff to target such employees for forced retirement or termination. Moreover, according to plaintiff, Mr. White intentionally positioned plaintiff for failure by placing him on a PIP that Mr. White knew plaintiff could not accomplish and, eventually, demoted plaintiff. In support of his claim, plaintiff first directs the court to the Kansas Supreme Court's opinion in *Dawson v. Associates Fi-*

*nancial Services Co.*, 215 Kan. 814, 529 P.2d 104 (1974), apparently suggesting that plaintiff's susceptibility to emotional distress[4] renders Mr. White's conduct more egregious and sufficient to support his claim. *See* Restatement (Second) of Torts § 46 cmt. f (1965) ("The extreme and outrageous character of the conduct may arise from the actor's knowledge that the other is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity."). Plaintiff's argument is unconvincing. In *Dawson*, the plaintiff, a debtor, had been unable to make car payments to defendant, her creditor, for reasons associated with multiple sclerosis. 215 Kan. at 815, 529 P.2d 104. The defendant's employees repeatedly telephoned, harassed and threatened the plaintiff "knowing full well the plaintiff had multiple sclerosis and knowing full well the plaintiff was making a claim under an insurance policy to cover the loan payments." *Id.* Reversing a directed verdict in favor of the defendant, the Kansas Supreme Court emphasized that "methods of collecting debts which might be reasonable in some circumstances, might also be regarded as outrageous in others where it is known that the debtor is particularly susceptible to emotional distress due to a disease such as multiple sclerosis." *Id.* at 825, 529 P.2d 104. Ultimately, the court ordered a new trial. *Id.*

Here, there is no evidence that Mr. White had reason to believe that plaintiff was "particularly susceptible" to emotional distress.[5] In fact, plaintiff's deposition testimony suggests that plaintiff successfully endured personal and professional hardships without emotional difficulties and that he suffered from emotional distress only after Mr. White began his purported campaign against plaintiff. In such circumstances, plaintiff's al-

---

4. According to plaintiff, he was particularly susceptible to emotional distress because of his age, his emotional investment in his career of thirty-eight years, and his financial reliance on his career. As defendant Kenny White points out, if such facts were sufficient to render an employee "particularly susceptible" to emotional distress and, thus, sufficient to render an employer's conduct outrageous, all long-term employees who suffered adverse employment actions would be able to state a claim for intentional infliction of emotional distress.

5. Plaintiff's only evidence that Mr. White had knowledge of plaintiff's alleged susceptibility to emotional distress is that Mr. White filed his answer to plaintiff's complaint, in which plaintiff alleged emotional distress, on December 24, 1997. This fact is irrelevant because it does not show that Mr. White had prior knowledge of plaintiff's alleged condition.

leged susceptibility to emotional distress does not render Mr. White's conduct more egregious. *See Wiehe v. Kukal,* 225 Kan. 478, 592 P.2d 860 (1979) (reversing judgment for plaintiff on emotional distress claim where there was no evidence that defendant had prior knowledge of plaintiff's susceptibility to mental distress and there was evidence that plaintiff's mental health had been good).

Plaintiff also cites *Dawson* in support of his argument that "the relative position of tortfeasor to victim" must be considered in analyzing plaintiff's emotional distress claim. *See Dawson,* 215 Kan. at 820–21, 529 P.2d 104 (recognizing that collecting creditors have been held liable for extreme abuse of their relationship with debtors) (citing Restatement (Second) of Torts § 46 cmt. e (1965)). This argument, too, fails. Although a special relationship between parties may contribute to the outrageous character of the conduct, such relationships are generally limited to those in which one party is a police officer, school authority, landlord or collecting creditor. Restatement (Second) of Torts § 46 cmt. e (1965). Even in those cases, however, the party will not be held liable "for mere insults, indignities, or annoyances that are not extreme or outrageous." *Id.* Plaintiff's suggestion that the supervisor-subordinate relationship present here renders Mr. White's conduct more egregious and sufficient to support his claim simply ignores that Kansas courts have been reluctant to extend this cause of action to the employment setting. *See Bolden v. PRC Inc.,* 43 F.3d 545, 554 (10th Cir.1994) (discussing and citing cases).

Plaintiff next draws a vague analogy between his case and several Kansas federal and state decisions—*Bernard v. Doskocil Cos.,* 861 F.Supp. 1006 (D.Kan.1994); *Laughinghouse v. Risser,* 754 F.Supp. 836 (D.Kan. 1990); *Taiwo v. Vu,* 249 Kan. 585, 822 P.2d 1024 (1991); and *Gomez v. Hug,* 7 Kan. App.2d 603, 645 P.2d 916 (1982). The facts in this case, however, are easily distinguished from each of the cases cited by plaintiff. The plaintiff in *Bernard,* the only African–American in the workplace, endured "a continued pattern of constant hostilities" on the basis of his race, including pranks, threats and racial slurs. 861 F.Supp. at 1015. Similarly, the plaintiff in *Gomez* was subjected to vulgar,

racist expressions and threats of violence resulting in possible serious medical problems. 7 Kan.App.2d at 610–11, 645 P.2d 916. In *Laughinghouse,* the plaintiff was the victim of sexual harassment from her supervisor over a two-year period. 754 F.Supp. at 843. The harassment included screaming, cursing, unwanted touchings, sexual comments and fits of rage. *Id.* The conduct of plaintiff's supervisor was characterized as "a concerted effort to terrorize her and to intentionally break her spirit." *Id.* Finally, the defendant in *Taiwo,* Ms. Vu, lied to a law enforcement officer by falsely claiming that Mr. Taiwo had vandalized her car; filed a false police report against the Taiwos concerning the vandalism; and induced an employee to lie to the police about the Taiwos' involvement in the vandalism. *Id.* Even assuming Mr. White engaged in the conduct described by plaintiff, his conduct falls far short of the intentional and malicious behavior described in the cases upon which plaintiff relies.

Here, there is no evidence that Mr. White engaged in any conduct during plaintiff's employment in an effort to intentionally inflict emotional distress upon plaintiff. Even assuming Mr. White pressured defendant to discharge older employees and placed plaintiff on the PIP as part of a concerted effort to drive plaintiff out of his position, such evidence suggests that Mr. White was attempting only to rid the workplace of older employees. In fact, plaintiff emphasizes in his papers that Mr. White put plaintiff on the informal PIP because of plaintiff's age and because plaintiff would not follow his directive to rid the workplace of older employees. Although Mr. White's conduct, if true, is quite possibly discriminatory and a potential basis for other relief, it was not aimed at causing plaintiff severe emotional distress. Rather, it was aimed at driving older workers, including plaintiff, from the workplace.

■ Construing the facts in a light most favorable to plaintiff, the court concludes that plaintiff cannot maintain a claim against defendant Kenny White for intentional infliction of emotional distress. To constitute sufficiently extreme and outrageous conduct, the conduct must be "so outrageous in character, and so extreme in degree, as to go

beyond the bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Bolden*, 43 F.3d at 554 (citing *Roberts v. Saylor*, 230 Kan. 289, 293, 637 P.2d 1175 (1981)). Plaintiff has not alleged any conduct by defendant Kenny White which was so outrageous in character or so extreme in degree as to be beyond the bounds of decency or to be regarded as atrocious and utterly intolerable in a civilized society. *See Byle v. Anacomp, Inc.*, 854 F.Supp. 738, 747–48 (D.Kan.1994) (no claim of outrage where plaintiff felt threatened by her supervisor, was called on occasion a "bitch" by her supervisor, and supervisor monitored her comings and goings and evaluated her performance harshly). Thus, the court grants defendant Kenny White's motion for summary judgment on plaintiff's claim.

## IV. Negligent Infliction of Emotional Distress

Plaintiff also claims that defendant Kenny White's actions constitute negligent infliction of emotional distress. In support of his motion for summary judgment, Kenny White contends that plaintiff's claim fails because he has failed to show that he has suffered emotional distress in conjunction with a physical injury as a result of Mr. White's conduct. As set forth in more detail below, the court agrees. Defendant's motion for summary judgment with respect to plaintiff's claim of negligent infliction of emotional distress is granted.

It is well settled under Kansas law that "there can be no recovery for emotional distress caused by the negligence of another unless accompanied by or resulting in physical injury." *Humes v. Clinton*, 246 Kan. 590, 598, 792 P.2d 1032 (1990) (citing cases). Moreover, a plaintiff seeking to recover for negligent infliction of emotional distress must show "that the physical injuries complained of were the direct and proximate result of the emotional distress caused by the [defendant's] alleged negligent conduct." *Hoard v. Shawnee Mission Medical Center*, 233 Kan. 267, 277, 662 P.2d 1214 (1983).

Apparently aware of the physical injury requirement, plaintiff has set forth a laundry list of physical symptoms and ailments in an effort to support his claim. Plaintiff claims, for example, that he has difficulty breathing and has experienced weakness, fatigue, headaches, gastrointestinal discomfort and sexual dysfunction. Plaintiff also claims that his "nerves" have been affected and that, as a result, his doctor has prescribed Paxil. Both federal and Kansas courts have repeatedly held that such symptoms are insufficient to support the "physical injury" requirement of a claim for negligent infliction of emotional distress. *See, e.g., Hernandez v. McDonald's Corp.*, 975 F.Supp. 1418, 1428 (D.Kan.1997) (headaches, back pain and neck pain not sufficiently severe to constitute physical injury for purposes of negligent infliction of emotional distress claim); *Schweitzer–Reschke v. Avnet, Inc.*, 874 F.Supp. 1187, 1197 (D.Kan. 1995) (general feeling of anxiety and shortness of breath insufficient to create jury issue regarding physical injury under Kansas law); *Anderson v. Scheffler*, 242 Kan. 857, 860, 752 P.2d 667 (1988) (recurring nightmares, depression, and generalized physical symptoms of emotional distress such as headaches and insomnia are insufficient to state cause of action for negligent infliction of emotional distress); *Hopkins v. State*, 237 Kan. 601, 612–13, 702 P.2d 311 (1985) (insomnia, headaches, weight gain and general physical upset insufficient to state claim); *Reynolds v. Highland Manor, Inc.*, 24 Kan. App.2d 859, 862, 954 P.2d 11 (1998) (decreased sexual relations due to emotional distress insufficient to constitute requisite physical injury).

Plaintiff also claims that he suffered a knee injury in conjunction with his emotional distress. Specifically, plaintiff asserts that he "hurt his knee at work because of the psychological pressure under which he was laboring post-informal PIP." The record is devoid of any evidence supporting a connection between plaintiff's knee injury, his emotional distress, and Mr. White's alleged conduct. The court could not begin to speculate how plaintiff's emotional distress resulted in torn knee cartilage. *See Hoard*, 233 Kan. at 277, 662 P.2d 1214 ("Recovery may not be had where the cause of the injury is too remote and speculative . . . .") (citation omitted). Without evidence of a causal connection, plaintiff's knee injury cannot support his claim for negligent infliction of emotional dis-

tress. *See id.* (A plaintiff can recover for negligent infliction of emotional distress "if, but only if, there is shown a clear and unbroken chain of causal connection between the negligent act, the emotional disturbance and the physical injury.") (citations omitted).

Finally, plaintiff claims that on April 11, 1997, he reported to the doctor because of a five-day period of coughing and sleep disturbances. The doctor noted that plaintiff suffered from a upper respiratory infection with symptoms such as fever, swollen glands, stuffy nose, sore throat, muscle aches, and chest pain. Plaintiff has offered no evidence, however, which would indicate that he became ill because of his emotional distress or as a result of any conduct engaged in by Mr. White. As with plaintiff's knee injury, it would be speculative at best to connect plaintiff's infection with the emotional distress he contends he suffered as a result of Mr. White's conduct.

In sum, despite plaintiff's exhaustive list of physical symptoms, the record presented to the court contains no evidence of any physical injuries sufficient to sustain plaintiff's claim for negligent infliction of emotional distress. Accordingly, the court grants defendant Kenny White's motion for summary judgment on this claim.

## V. Battery

■ Plaintiff also asserts a battery claim against defendant Kenny White.[6] Specifically, plaintiff claims that Mr. White, on several occasions, placed his hands on plaintiff's back or tapped him with a single sheet of rolled-up paper, while asking plaintiff how he was doing or calling him "buddy." Although plaintiff concedes he suffered no physical harm from these contacts, he claims that the contacts, in light of the nature of the relationship between plaintiff and Mr. White, were offensive, degrading and humiliating.

■ In order to establish a battery under Kansas law, plaintiff must show "an unprivileged touching or striking, done with the

intent of bringing about either a contact or an apprehension of a contact that is harmful or offensive." *Marten v. Yellow Freight System, Inc.,* 993 F.Supp. 822, 830 (D.Kan.1998) (quoting *Daniels v. Dillard Dep't Stores, Inc.,* 881 F.Supp. 505, 510–11 (D.Kan.1995) (citing *Stricklin v. Parsons Stockyard Co.,* 192 Kan. 360, 366, 388 P.2d 824 (1964))); PIK Civ.3d 127.02 (1997). In support of his motion for summary judgment, Kenny White maintains that plaintiff's battery claim fails because the contacts were not offensive and Mr. White did not intend to offend plaintiff.[7] As set forth below, the court agrees with defendant Kenny White and grants his motion for summary judgment on plaintiff's battery claim.

As set forth above, plaintiff concedes that Mr. White's contacts were not physically harmful; rather, plaintiff argues that the contacts were offensive. In order for a contact to be offensive for purposes of a battery claim, the contact must be one which would offend "a reasonable sense of personal dignity." Restatement (Second) of Torts § 19 (1965). In other words, the contact "must be one which would offend the ordinary person and as such one not unduly sensitive as to his personal dignity." *Id.* § 19 cmt. a. Thus, the question presented here is whether an ordinary person would be offended if someone (who was an opponent in a civil lawsuit) tapped him or her with a single sheet of rolled-up paper or touched him or her on the back during the course of a casual greeting.

Even if plaintiff despised Mr. White and plaintiff's filing of a lawsuit against Mr. White strained the relationship between them, the contacts described by plaintiff cannot be considered offensive. The interactions described by plaintiff

> are conditions generally inherent in every working situation. Although the amount and type of interaction with supervisors, co-workers, or customers may vary depending on the type of working situation,

---

6. Plaintiff initially asserted an assault claim in conjunction with his battery claim. Both parties focus their arguments only on plaintiff's battery claim and, thus, it appears that plaintiff had abandoned his assault claim. Accordingly, defendant's motion for summary judgment on plaintiff's assault claim is granted.

7. Defendant Kenny White also maintains that plaintiff consented to the contacts and, thus, his contacts were privileged. The court need not address this argument in light of its determination that plaintiff's battery claim fails for the other reasons cited by defendant.

some interaction is inherent. Human interaction involves greeting.

*Fuls v. SAIF Corp.*, 321 Or. 151, 894 P.2d 1163, 1169 (Or.1995) (conduct of customer—grabbing employee from behind in a "bear hug"—cannot be characterized as tortious where plaintiff's own statements "show that the greeting was simply that—a greeting—which lacked any intent on the part of the customer to bring about harm.") (citations omitted). Although plaintiff may have been offended by Mr. White's contacts, there is no evidence in the record that plaintiff ever indicated to Mr. White that he was offended by Mr. White's conduct or that he asked Mr. White to refrain from touching him. In such circumstances, if the court were to construe these innocuous contacts of which plaintiff complains as offensive, it "would essentially be excising this requirement from the tort of battery." *See Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 622–23 (7th Cir. 1989) (affirming district court's grant of summary judgment for defendant on plaintiff's battery claim where contact—flight attendant taking plaintiff by arm, leading her to cockpit, and strapping plaintiff in cockpit seat—could not be considered offensive or harmful). In essence, the court fails to see how Mr. White tortiously injured plaintiff during his casual contact with plaintiff. *See id.* at 622.

Moreover, there is simply no evidence in the record suggesting that Mr. White intended to harm or offend plaintiff by touching him or tapping him during the course of his greeting plaintiff. Significantly, plaintiff does not allege that Mr. White was angry, upset or rude during these encounters. In fact, the evidence suggests only that Mr. White, at least on occasion, was attempting to be cordial to plaintiff despite plaintiff's lawsuit against him. In the absence of any showing by plaintiff that Mr. White intended to harm or offend plaintiff by his contacts, summary judgment in favor of defendant Kenny White is appropriate. *See Stricklin v. Parsons Stockyard Co.*, 192 Kan. 360, 366, 388 P.2d 824 (1964) (interpreting plaintiff's claim as a claim for negligence rather than a claim for battery where individual unintentionally caused injury to plaintiff during "farcical prank"). *See also Bradley v. Morton Thiokol, Inc.* 661 So.2d 691, 695 (La.Ct.App.

1995) (supervisor who patted plaintiff-employee on the back while asking her a question did not commit battery where there was no evidence in the record that supervisor desired a harmful or offensive contact with plaintiff).

In sum, the court concludes that Mr. White's conduct, as described by plaintiff, would not offend a "reasonable sense of personal dignity." Moreover, plaintiff has not come forward with any evidence suggesting that Mr. White intended to offend plaintiff by his conduct. Thus, summary judgment in favor of Mr. White on plaintiff's battery claim is appropriate.

## VI. Vicarious Liability Against Defendant General Motors

Finally, plaintiff claims that defendant General Motors is vicariously liable for the torts allegedly committed by defendant Kenny White. Because plaintiff's claim against defendant General Motors derives from plaintiff's claims against defendant Kenny White, the court's grant of summary judgment on plaintiff's claims against Kenny White mandates the dismissal of plaintiff's vicarious liability claim against defendant General Motors.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants' motion for summary judgment on plaintiff's tort claims (doc. # 70) is granted and these claims are dismissed in their entirety.

**IT IS SO ORDERED.**