**Jean WHITE, Plaintiff,**

**v.**

**William DUNLAP; Dianne Garner; and Washburn University of Topeka Board of Regents, Defendants.**

**No. 99–4089–RDR.**

United States District Court, D. Kansas.

Oct. 31, 2001.

Deborah J. Purce, Topeka, KS, for Jean White.

Marta Fisher Linenberger, Arthur E. Palmer, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, for William Dunlap, Washburn University of Topeka.

Arthur E. Palmer, K. Gary Sebelius, Wright, Henson, Somers, Sebelius, Clark & Baker, LLP, Topeka, KS, for Dianne Garner.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This case is now before the court upon defendants' long-pending motions for summary judgment. This is a § 1983 action alleging a violation of plaintiff's substantive due process rights. Plaintiff also asserts supplemental Kansas law claims of negligent retention and supervision as well as intentional infliction of emotional distress (outrage).

Plaintiff is a former faculty member in the School of Social Work at Washburn University. The defendants are: Washburn University; William Dunlap, the Dean of the School of Applied Studies at Washburn; and Dianne Garner, a former chair of the School of Social Work at Washburn. In general, plaintiff asserts that defendant Garner was physically and verbally abusive toward plaintiff to the point of being assaultive, and that the other defendants failed to take reasonable measures to prevent and punish this misconduct in spite of adequate notice.

Summary judgment is appropriate when "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The movant has the burden to "demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.) cert. denied, 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). The court reviews the evidence and draws all reasonable inferences in the light most favorable to the nonmovant. *Thomas v. International Business Machines*, 48 F.3d 478, 484 (10th Cir.1995). Summary judgment shall be granted un- less there is evidence upon which a reasonable jury could find for the nonmovant. *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir.1995) cert. denied, 516 U.S. 1160, 116 S.Ct. 1045, 134 L.Ed.2d 192 (1996). Conclusory allegations will not create a genuine issue of material fact defeating a summary judgment motion. *White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir.1995).

Many facts are uncontroverted in this matter. The court shall attempt to summarize those facts. Plaintiff started teaching at Washburn as an assistant professor of social work in August 1995. This was a tenure track position. Plaintiff's evaluations by defendant Garner in 1995 and 1996 were supportive and encouraging. A dispute arose between plaintiff and defendant Garner concerning the untimely completion of plaintiff's two-year report on her progress towards tenure. The report was due to the Dean and Vice President of Academic Affairs. There was some confusion by plaintiff as to the report plaintiff was expected to make and a similar report due from defendant Garner. Plaintiff was under the mistaken impression that Garner was doing the report for plaintiff. On May 13, 1996, plaintiff received a note from defendant Garner which read:

I asked for your 2 year review by May 10th. Where is it[?] Its due to Willie today and I guess I'll have to tell him you didn't do it. It is scheduled to go from Willie to Vice President Sheley. Do you want to keep working here? ? ?

The failure to do the report could have negatively affected plaintiff's chances of obtaining tenure. When plaintiff delivered her report to defendant Garner on May 14, 1996, Garner told plaintiff that she had made a stupid error that Garner did not want to happen again. Garner also complimented plaintiff on the work she had done. Although plaintiff apologized for

the mistake and explained that there was a misunderstanding, according to plaintiff Garner raised her voice and started pushing plaintiff with an open hand against plaintiff's shoulder. Plaintiff has testified that defendant Garner continually pushed plaintiff until she had her pinned up against a copy machine in the outer office. This was witnessed by Dr. Palmer of the School of Social Work. She did not report it or pursue the matter, however, at plaintiff's request.

Plaintiff claims that her shoulder was sore after the incident for two or three days. But, she was able to sleep through the night.

Plaintiff told another faculty member, Dr. Leedy, what happened. Dr. Leedy contacted Dr. Pettys. Together with plaintiff they met with defendant Garner on May 21, 1997. The discussion concerned defendant Garner's tendency to yell and scream at meetings and the "pushing" incident between Garner and plaintiff. Garner denied that she pushed plaintiff, although she did not deny that there was physical contact. She apologized to plaintiff; plaintiff accepted the apology; and the two exchanged a hug. Plaintiff felt the matter was resolved.

According to plaintiff, the next day Garner returned to plaintiff's office and ranted for hours that plaintiff was organizing faculty opposition to Garner. Plaintiff testified that this occurred again the following day for an hour and a half, even though plaintiff had locked the door to her office. Plaintiff stated that defendant Garner entered the office using a master key. According to plaintiff, defendant Garner engaged her again on June 4, 1997 and had a similar harangue.

On June 18, 1997, at a meeting which plaintiff did not instigate, plaintiff informed Washburn University counsel and defendant Dunlap, as well as other persons, that defendant Garner had pushed her. Plaintiff asserts that defendant Dunlap asked plaintiff what she did to provoke defendant Garner.

On June 24, 1997, defendant Garner again rehashed matters with plaintiff in plaintiff's office for four or five hours. According to plaintiff, on June 25, 1997, defendant Garner was back in plaintiff's office the first thing in the morning. Among the matters discussed was whether plaintiff crossed student/faculty boundaries by talking to a student about defendant Garner.

Defendant Dunlap asked plaintiff about the "pushing" incident on June 28, 1997 when the two were in the office together.

On July 7, 1997, defendant Dunlap asked Dr. Palmer if she witnessed the incident. Dr. Palmer said she did but that plaintiff didn't want her to do anything about it.

On July 11, 1997, defendant Garner met with defendant Dunlap and informed him that she wanted to step down from chairing the department when the accreditation process was completed in the fall because defendant Garner had a terminal illness which had resurfaced after being in remission. Defendant Garner, who had mentioned her physical problems to defendant Dunlap in previous months, told him that the illness caused her to be irritable, affected her personality and caused her physical pain. Dr. Garner also described the "pushing" incident with plaintiff and said that plaintiff had accepted defendant Garner's apology.

Plaintiff did not see defendant Garner during the latter part of July and the first half of August.

On October 8, 1997, plaintiff met with defendant Dunlap and an assistant dean. She told them that she felt defendant Dunlap condoned defendant Garner's actions. Defendant Dunlap told plaintiff that no action was taken because Carol Vogel, the

University EEO officer, was on leave during the summer.[1] Vogel eventually did meet with plaintiff and conducted an investigation. Plaintiff does not complain about the conduct of the investigation, only the belated timing.

In late October 1997, defendant Garner was instructed via letter from defendant Dunlap that her behavior was inappropriate and that she should not approach plaintiff with anything other than professional issues. Defendant Dunlap further informed defendant Garner that she could resign or he would move forward with disciplinary proceedings. Plaintiff was told to inform defendant Dunlap if defendant Garner approached plaintiff in an inappropriate way. Two or three days later, defendant Garner took medical leave from her position. At the same time she gave Washburn University a letter of resignation effective at the end of the Spring semester. Defendant Garner has stated that her decision to resign was made prior to receiving the letter from defendant Dunlap. Plaintiff did not have contact with defendant Garner again.

Plaintiff resigned her position at Washburn in the summer of 1999. Up to that time plaintiff had continued to teach at Washburn and was receiving positive evaluations. She was offered continued employment in the same position for the next academic year. Plaintiff claims she was forced to resign because she was unable to work due to what she perceived as the administration's unfair, slow and tepid response to the pushing incident and other altercations between plaintiff and defendant Garner. Plaintiff's emotional wounds remained; she felt insecure and unsafe; and she blamed the administration for failing to provide a supportive and secure work environment.

Plaintiff underwent peer counseling with Vettra Ford, a fellow social worker, in July 1997. Plaintiff met with Ford for counseling seven times, the last time occurring in November 1997. In January 1999, plaintiff had further peer counseling with Roy Abbott. She had five counseling sessions with Abbott, the last one occurring in June 1999. The first time plaintiff consulted any health care practitioner regarding the "pushing" incident was approximately three months prior to the taking of her deposition on January 20, 2000. Plaintiff was prescribed some medication one week prior to the deposition. Earlier, in November 1999, plaintiff saw a clinical social worker who had completed her Ph.D. in August 1999. This person, Annmarie Glodich, diagnosed plaintiff with post-traumatic stress disorder, but did not render an opinion as to the cause of the disorder.

Defendant Garner had an altercation with another faculty member, Fred Besthorn, in September 1997. In his discussion of the matter with Assistant Dean Peterson, Besthorn thought that Peterson had admitted knowledge of defendant Garner's "aberrant behavioral patterns" but offered no specific details.

Defendant Garner testified that, because of her health problems, pain and lack of sleep, it was not uncommon for her to become irritated or overreact with members of her department during the last few months she was on campus. She testified that her irritability surfaced with defendant Dunlap, but did not remember any specific incident. She also had told defendant Dunlap of her health problems in the Spring of 1997. She requested that Dr. Palmer be made Assistant Director of the School of Social Work so she could better

---

1. Vogel was on leave at that time because her son was suffering from a terminal brain tumor.

help defendant Garner with the School's work.

Substantive due process

Plaintiff's claim under 42 U.S.C. § 1983 alleges a violation of her right to substantive due process. The Due Process Clause of the Fourteenth Amendment prohibits governmental action which deprives "any person of life, liberty or property, without due process of law...." U.S. Const. Amend. XIV, § 1.

In this case, plaintiff cannot prove that defendants deprived her of a property interest. Plaintiff was not discharged; she was not refused tenure; she chose to resign more than a year after defendant Garner resigned. Plaintiff chose to resign even though she was offered continued employment. There was no evidence that the circumstances of her employment would have forced a reasonable person to resign. A constructive discharge requires factors which would make working conditions intolerable for a reasonable person. See *James v. Sears, Roebuck & Co., Inc.*, 21 F.3d 989, 992 (10th Cir.1994). There was no constructive discharge in this case. A reasonable person may have been disappointed by the events in this case, but a reasonable person would not have felt compelled to resign.

Plaintiff appears to claim that a liberty interest was deprived by arbitrary governmental action or action which shocks the conscience. But, this claim must fail. There is no fundamental liberty interest identified in these facts which was deprived by arbitrary governmental action. The Due Process Clause does not protect the liberty to hold a specific job. *Singleton v. Cecil*, 176 F.3d 419, 425–29 (8th Cir.) cert. denied, 528 U.S. 966, 120 S.Ct. 402, 145 L.Ed.2d 313 (1999). Nor does it protect against being harangued or pushed by an irritable supervisor. Fundamental liberties are not jeopardized by such conduct. The Tenth Circuit has attempted to describe the kind of liberties protected under the umbrella of substantive due process:

"The concept of substantive due process is not fixed or final, *Rochin*, 342 U.S. at 170, 72 S.Ct. at 208–209, but generally is accorded to matters relating to marriage, family, procreation, and the right to bodily integrity, see *Albright v. Oliver*, 510 U.S. 266, 271–72, 114 S.Ct. 807, 812, 127 L.Ed.2d 114 (1994) (citation omitted); see also *Collins*, 503 U.S. at 125, 112 S.Ct. at 1068 ("As a general matter, the Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended."). A substantive due process violation must be something more than an ordinary tort to be actionable under § 1983.

*Abeyta By and Through Martinez v. Chama Valley Independent School District*, 77 F.3d 1253, 1257 (10th Cir.1996). Here, although plaintiff asserts substantial emotional and slight physical harm, we do not believe this matter is one which touches upon fundamental liberties.

Defendants did not commit the type of injury-causing acts which shock the conscience and thereby violate the right to substantive due process guaranteed by the Constitution. See *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (applying the "shock the conscience" standard to substantive due process claims). There is no evidence that there was malice or an intent to injure by any defendant; this is usually necessary to convert an assault or battery claim into a constitutional tort. *Askew v. Millerd*, 191 F.3d 953, 957–58 (8th Cir.1999). There are no facts which make this case more "shocking" than *Collins v. Harker Heights*, 503 U.S. 115, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992), where the Court held

that the fatal failure to provide a safe working environment for a city employee who died of asphyxia did not violate the Due Process Clause, or *Lewis,* 523 U.S. at 855, 118 S.Ct. 1708, where a 100 m.p.h. police pursuit of a motorcyclist for a speeding violation led to the death of a passenger on the motorcycle, but did not shock the conscience of the Court. See also, *Abeyta,* 77 F.3d at 1257–58 (10th Cir.1996) (teacher who allegedly called twelve-year-old student a prostitute in front of class over period of several weeks and allowed other students to do the same did not violate substantive due process rights); *Dobson v. City and County of Denver,* 81 F.Supp.2d 1080 (D.Colo.1999) (failure to give security guard notice of threats by city employee who later murdered the guard did not violate substantive due process rights); cf., *Garcia ex rel. Garcia v. Miera,* 817 F.2d 650 (10th Cir. 1987) cert. denied, 485 U.S. 959, 108 S.Ct. 1220, 99 L.Ed.2d 421 (1988) (nine-year-old held upside down by a teacher and beaten on the legs with a split wooden paddle by the principal resulting in bleeding, a welt, a two-inch cut, and a permanent scar shocked the conscience). This case is also distinguishable from cases cited by plaintiff·such as *Haberthur v. City of Raymore,* 119 F.3d 720 (8th Cir.1997) which involved harassment and unwanted sexual fondling by a police officer and *Burton v. Livingston,* 791 F.2d 97 (8th Cir.1986) which involved threats, epithets and gun pointing by a prison guard against a prisoner in retaliation for court testimony.

■ There is no special relationship or danger creation theory applicable to these facts. A consensual employment relationship is not "special relationship" where there is an affirmative duty of protection for substantive due process purposes. *Uhlrig v. Harder,* 64 F.3d 567, 572 (10th Cir.1995) cert. denied, 516 U.S. 1118, 116 S.Ct. 924, 133 L.Ed.2d 853 (1996). Nor was the danger here so serious and so

obvious and known to defendants that the danger creation theory is applicable. *Id.* at 574.

In sum, plaintiff cannot establish the loss of a property interest or a fundamental liberty interest. Nor can plaintiff establish that defendants took actions which shock the conscience or that there existed a special relationship creating a duty of protection or that a danger was created warranting liability for violation of the Due Process Clause. Therefore, summary judgment shall be granted against plaintiff's § 1983 claims.

Outrage

■ There are two threshold issues that must be decided before liability may be imposed for intentional infliction of emotional distress (outrage): whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, and whether the emotional distress suffered by the plaintiff is in such extreme degree that the law must intervene because no reasonable person should be expected to endure it. *Holdren v. General Motors Corp.,* 31 F.Supp.2d 1279, 1283 (D.Kan.1998). Here, we will focus on the first issue.

■ It has been observed that, "the overwhelming majority of Kansas cases have held in favor of defendants on the outrage issue, finding that the alleged conduct was insufficiently 'outrageous' to support the cause of action." .*Lindemuth v. Goodyear Tire and Rubber Co.,* 19 Kan. App.2d 95, 864 P.2d 744, 749 (1993). This trend has continued since the time of that observation and includes cases involving verbal tirades, insults, allegations of false imprisonment, and battery. See *Bolden v. PRC, Inc.,* 43 F.3d 545 (10th Cir.1994) cert. denied, 516 U.S. 826, 116 S.Ct. 92, 133 L.Ed.2d 48 (1995) (verbal epithets, insults and a violent pushing incident); *Holdren,* 31 F.Supp.2d at 1282–1285 (alleged

campaign of coercion, intimidation and pressure by supervisor); *Marten v. Yellow Freight System, Inc.*, 993 F.Supp. 822, 828–29 (D.Kan.1998) (threats against employment, refusal to investigate complaints, intimidation with scissors, false imprisonment, a bumping incident, and hitting plaintiff on arm during a tirade).

Because we conclude that the alleged misconduct of defendants is insufficiently extreme and outrageous to support a claim for outrage under Kansas law, the court shall grant summary judgment against that claim.

Negligent retention

Finally, the court shall consider plaintiff's claim of negligent retention and supervision against defendants Washburn University and Dunlap. Liability on such a claim requires proof of a "causal relationship between the dangerous propensity or quality of the employee, of which the employer ha[d] or should have [had] knowledge, and the injuries suffered by the [plaintiff]; the employer must, by virtue of knowledge of the employee's particular quality or propensity, have [had] reason to believe that an undue risk of harm exist[ed] to others as a result of continued employment of that employee; and the harm which result[ed] must be within the risk created by the known propensity." *Schmidt v. HTG, Inc.*, 265 Kan. 372, 961 P.2d 677, 689, Syl. para. 10 (Kan.1998) cert. denied, 525 U.S. 964, 119 S.Ct. 409, 142 L.Ed.2d 332 (1998).

 Defendants assert that summary judgment is justified against this claim because neither defendant had reasonable knowledge or notice that defendant Garner was unfit, incompetent or a risk to commit assault or battery, assuming that assault or battery was committed. The court agrees. There was notice that defendant

Garner was suffering from health problems which made her irritable and that because of these health problems she requested Dr. Palmer to be promoted to a position to help defendant Garner with the responsibilities of chair of the department. There was also notice that defendant Garner screamed or yelled at coworkers. This is not adequate to show notice in May or June of 1997 that defendant Garner was unfit or incompetent or that she had a propensity to commit an assault or battery against a coworker or presented an undue risk of committing an assault or battery. No reasonable jury could find otherwise.[2] Therefore, summary judgment shall be granted against this claim.

Conclusion

In conclusion, for the above-stated reasons, the court shall grant defendants' motions for summary judgment.

**IT IS SO ORDERED.**

---

**2.** In addition, we note that plaintiff does not deny defendant Dunlap's contention that he

was not responsible for retaining defendant Garner.