No. 122,704

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JOHN DOE,
*Appellant*,

v.

KANSAS STATE UNIVERSITY and HEATHER REED,
*Appellees*.

SYLLABUS BY THE COURT

1.

K.S.A. 2020 Supp. 60-210(a) does not bar anonymous or pseudonymous suits where an important privacy interest is recognized. *Unwitting Victim v. C.S.*, 273 Kan. 937, 944, 47 P.3d 392 (2002). Rather than dismiss an anonymous party's case for failure to seek permission to proceed anonymously, the district court must apply a two-part test to determine (a) whether an important privacy interest exists (a legal determination), and (b) whether the party displayed a privacy interest of a magnitude sufficient to warrant anonymous filing (a factual determination).

2.

The first step of the two-step analysis under Kansas' Public Speech Protection Act, K.S.A. 2020 Supp. 60-5320, does not delve into the merits of the plaintiff's claim. Instead, it only looks at the content of the claim to determine if it concerns the "exercise of the right of association," the "exercise of the right of free speech," or the "exercise of the right to petition," as those terms are defined by the Act.

1

3.

When determining the second step of the two-step analysis under K.S.A. 2020 Supp. 60-5320, a court is not required to accept the facts alleged in a plaintiff's petition as true. Rather, it considers the petition on the same footing as any other pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

Appeal from Riley District Court; JOHN F. BOSCH, judge. Opinion filed October 1, 2021. Affirmed.

*John M. Duggan* and *Deron A. Anliker*, of Duggan Shadwick Doerr & Kurlbaum LLC, of Overland Park, for appellant.

*M.J. Willoughby*, assistant attorney general, and *Derek Schmidt*, attorney general, for appellees.

Before WARNER, P.J., CLINE, J., and WALKER, S.J.

CLINE, J.:  A former student sued Kansas State University and University Administrator Heather Reed over Reed's disclosure of information about the student to his new college. KSU made a prima facie showing under K.S.A. 2020 Supp. 60-5320—Kansas' Public Speech Protection Act—that Reed's communication was an exercise of rights protected under the Act. The former student failed to show a likelihood of prevailing on his claims. Instead, he unsuccessfully attacked KSU and Reed's prima facie showing by wrongly claiming KSU and Reed violated his rights under the Family Educational Rights and Privacy Act (FERPA) and baldly asserting KSU and Reed defamed him. The district court did not err in striking his petition and dismissing his case. Therefore, we affirm.

FACTS

John Doe was enrolled at KSU from 2010 to 2012. While he was attending another university in 2018, an employee of that university contacted KSU to obtain Doe's student academic records. That university also asked if there had been any official outcomes with complaints against Doe while Doe attended KSU. Reed responded to the request by e-mail, stating: (1) Doe had sanctions in Housing and was removed, (2) Doe had two stalking complaints at the Office of Institutional Equity and was sanctioned, and (3) Doe had Code of Conduct complaints and was ultimately expelled from KSU. Doe also alleged Reed provided the other university with an "altered" academic transcript which contained a notation that Doe was ineligible to reenroll at KSU and was also stamped "'ADMINISTRATIVE DISMISSAL.'"

Doe later sued both KSU and Reed, claiming the information transmitted by Reed was false and defamatory and its disclosure violated his rights under FERPA, 20 U.S.C. § 1232g (2018). He asserted various negligence claims as well, all stemming from Reed's e-mail exchange. KSU and Reed moved to dismiss Doe's petition. Before Doe responded, KSU and Reed moved to strike Doe's petition pursuant to K.S.A. 2020 Supp. 60-5320, Kansas' Public Speech Protection Act, also known as Kansas' anti-SLAPP statute (the Act). They argued Reed's e-mail was an exercise of the right of free speech, the right to petition, and the right of association, which are all protected under the Act.

Doe responded to the motions to strike by attacking KSU and Reed's prima facie case that the disclosure was a protected exercise of their claimed rights. He asserted they had no right to disclose the information in the e-mail because it was confidential information protected from disclosure by FERPA. He did not address the merits of his claims, claiming it was unnecessary since he alleged KSU and Reed had not made a prima facie case that the Act protected the disclosure.

3

At the hearing on the motions to strike, KSU and Reed argued the disclosure was authorized under a FERPA exception, 34 C.F.R. § 99.31(a)(2) (2020). Doe did not address this exception. Instead, he simply repeated his assertion that the e-mail disclosure did not fall within the anti-SLAPP statute's protected rights of free speech, association, or petition, and was prohibited by FERPA. He also generically asserted the disclosure was defamatory and thus not protected by the Act. The court issued a detailed order granting the motions to strike and dismissing the case. Specifically, the court held:

"5. Upon review of the written submissions and upon hearing the arguments at hearing on November 26, 2019, the Court finds that the Defendants have met their initial burden of setting forth a prima facie case that Plaintiff's Petition is based upon, relates to or is in response to Defendant KSU and Heather Reed's exercise of the right of free speech, right to petition or right of association within the meaning of K.S.A. 60-5320 (2019 Supp.). The Court finds that Defendants' arguments as articulated in the Motions to Strike are persuasive and adopts them by reference as though wholly restated herein.

"6. Specifically, the Court finds that the Petition is a 'claim' subject to the Kansas Public Speech Protection Act, K.S.A. 60-5320 (2019 Supp.) as defined in K.S.A. 60-5320(c)(1) (2019 Supp.). The Petition relates to and is in response to a party's exercise of the right of free speech, right to petition and right of association as per K.S.A. 60-5320(d) (2019 Supp.). The Petition is based on the allegation that pursuant to her official duties as a KSU official responsible for communicating with other universities, Ms. Reed responded to a request for information from another university where Plaintiff was enrolled. Ms. Reed's response was in the form of an email sent on or about June 13, 2018. . . . Ms. Reed's June 13, 2018 email is a communication as defined in the Act. K.S.A. 60-5320(c)(2) (2019 Supp.).

"7. The act of a governmental official, a public servant, Ms. Heather Reed, of sending the June 13, 2018, email in the course of her official duties in response to a request from an official at another university for information about official outcomes regarding Complaints regarding Plaintiff was an exercise of the right of free speech as it was a communication made in connection with a public issue or issue of public interest, defined in the Act to include an issue related to 'health or safety; environmental, economic, or community well-being, the government, a public official or public figure, or a good, product or service in the marketplace.' K.S.A. 60-5320(c)(7) (2019 Supp.). By

4

communicating with another university official regarding whether Plaintiff had been sanctioned by KSU, Ms. Reed was communicating on a public issue and an issue of public interest, *i.e.*, health, safety and community well-being of university students and more specifically, protection of university students from stalking and other unwanted behavior. This was an 'exercise of the right of free speech,' as defined in K.S.A. 60-5320(c)(4) (2019 Supp.), as it was a communication 'made in connection with a public issue or issue of public interest.' Concerns about student safety, including concerns about stalking, fall within the subject matter of health or safety and community well-being set forth in K.S.A. 60-5320(c)(7) (2019 Supp.).

"8. Ms. Reed was also exercising her right of association in this communication as defined in K.S.A. 60-5320(c)(3) (2019 Supp.), as it was a communication 'between individuals who join together to collectively express, promote, pursue or defend common interests,' *i.e.*, the two university officials' common interest in student safety and welfare. According to the Petition, Ms. Reed's responsibilities at KSU include responding to communications and releasing information to other universities. . . . The complained of email was sent by Ms. Reed in response to an inquiry from a university official at another university where Plaintiff was enrolled. . . . Thus, the email in question between university officials was protected under the Act as it was a communication 'between individuals who join together to collectively express, promote, pursue [or] defend common interests,' within the meaning of K.S.A. 60-5320(c)(3)(2019 Supp.).

"9. Ms. Reed's email is also protected as an exercise of the right to petition, which is defined under the Act as a communication pertaining to an official proceeding, whether at KSU or at the other university. K.S.A. 60-5320(c)(5) (2019 Supp.). An 'official proceeding' is defined in the Act to mean 'any type of administrative, executive, legislative or judicial proceeding that may be conducted before a public servant.' K.S.A. 60-5320(c)(9) (2019 Supp). 'Public servant' means a person 'elected, selected, appointed, employed or otherwise designated as one of the following, . . . an officer, employee or agent of the government,' and a 'person who is authorized by law or private written agreement to hear or determine a cause or controversy,' among others. K.S.A. 60-5320(c)(10)(A), (C) (2019 Supp.). The communications protected by the statute include communications 'in connection with an issue under consideration or review of an issue by a legislative, executive, judicial or other governmental or official proceeding.' K.S.A. 60-5320(c)(5)(B) (2019 Supp.).

5

"10. The communication is within the scope of the statute because it is protected activity under the Act—a communication of student information pertaining to an official proceeding. K.S.A. 60-5320(c)(5), (c)(9) (2019 Supp.). As an employee of KSU acting within the scope of her employment, Ms. Reed qualifies as a public servant under the Act. K.S.A. 60-5320(c)(10)(A) (2019 Supp.). . . . Plaintiff's Petition pleads that the complained of email by Ms. Reed concerned the results of official proceedings conducted at KSU while Plaintiff was a student there. The Petition also pleads that Ms. Reed's June 13, 2018 communication occurred as a result of her being contacted by an official at the university where Plaintiff was enrolled. According to the Petition, the employee at the other university was trying to find out information about official outcomes with Complaints against the Plaintiff while Plaintiff Doe was a student at KSU. Plaintiff's Petition complains that as a result of the communication and official proceeding at the other university, a 'loss of status' to Plaintiff resulted. . . .

"11. Both Plaintiff's October 31, 2019, written response to the Motion to Strike and Plaintiff's arguments at the hearing were focused on the argument that because the June 13, 2018 email communicated student information and invoked the Plaintiff's right of privacy under FERPA, that Defendants had not established first amendment rights with respect to said information and thus K.S.A. 60-5320 was inapplicable. In support of the argument that FERPA was violated, Plaintiff cited to 20 U.S.C. 1232g(b)(6)(B) and (C). In response to Plaintiff's argument that FERPA was violated, Defendants argued that the complained of email was authorized by FERPA, specifically 34 CFR Pt. 99.31(a)(2), which authorizes an educational institution to disclose information without consent 'subject to the requirements of [§]99.34, to officials of another . . . institution of postsecondary education where the student seeks or intends to enroll, or where the student is already enrolled so long as the disclosure is for purposes related to the student's enrollment or transfer.'

"12. Defendants also cited *Laker v. Board of Trustees of California State Univ.*, 32 Cal App. 5th 745, 761, 244 Cal. Rptr. 238 (2019) for the proposition that a general allegation of illegality will not defeat an anti-SLAPP motion.

"12 [*sic*]. Because Defendants met their initial burden under K.S.A. 60-5320(d) (2019 Supp.) of showing that the Petition was a claim based upon, relating to and in response to a party's exercise of the right of free speech, right to petition or right of association, the burden shifted to Plaintiff to 'establish a likelihood of prevailing on the

6

claim by presenting substantial competent evidence to support a prima facie case' as required by K.S.A. 60-5320(d) (2019 Supp.).

"13. The Court finds that Plaintiff has failed to meet his burden under K.S.A. 60-5320(d) (2019 Supp.) of establishing a likelihood of prevailing on his claim against Defendants. Plaintiff did not show how he would overcome the bases for dismissal argued in the Defendants' Motions to Dismiss, including but not limited to the bar of the statute of limitations, which would apply to all claims asserted in the Petition.

"14. Therefore for the reasons stated herein and as further elaborated upon in the Defendants' Motions to Strike which the Court finds persuasive and adopts by reference as though fully restated herein, the Court finds that the Motions to Strike filed by Defendants Kansas State University and Heather Reed should be and hereby are granted by the Court and that Plaintiff's action and all of the claims contained therein are hereby dismissed."

## ANALYSIS

On appeal, Doe echoes his claims that (a) FERPA prohibits disclosure of the information in Reed's e-mail, (b) the e-mail was untrue and defamatory, and (c) the anti-SLAPP statute does not protect such communications. We are not persuaded. FERPA does not shield Doe from disclosure of this information, nor can he use it as a weapon against KSU and Reed. Doe also failed to satisfy his burden to show the information in Reed's e-mail and the transcript were untrue and defamatory. We find the district court properly struck Doe's claims, which all arose out of the same e-mail exchange.

*Doe's use of a pseudonym does not deprive this court of jurisdiction over his appeal.*

Before we address the merits of Doe's appeal, we must dispose of KSU and Reed's jurisdictional challenge. KSU and Reed claim both the district court and this court lack jurisdiction because Doe did not request permission to proceed using the pseudonym, "John Doe." KSU and Reed raised this argument in their motions to dismiss but, since the district court granted their motions to strike, it never addressed their motions to dismiss.

7

Even so, as KSU and Reed correctly note, a jurisdictional challenge may be raised at any time or even on the appellate court's own motion. *Mid-Continent Specialists, Inc. v. Capital Homes*, 279 Kan. 178, 185, 106 P.3d 483 (2005).

KSU and Reed rely on *Unwitting Victim v. C.S.*, 273 Kan. 937, 47 P.3d 392 (2002), which affirmed dismissal of an action filed under a pseudonym without leave of court. KSU and Reed claim *Unwitting Victim* supports their argument that Doe's case was not properly commenced, meaning we have no jurisdiction over his appeal. But they take the holding in *Unwitting Victim* out of context. Our Supreme Court did not find a party's failure to seek permission to proceed anonymously deprives the court of jurisdiction. Instead, it held that "although K.S.A. 60-210(a) expressly requires the names of the parties, that statute does not bar anonymous or pseudonymous suits where an important privacy interest is recognized." 273 Kan. at 944. Rather than mandate dismissal when a party fails to seek permission to proceed anonymously, the Supreme Court adopted a test which requires the district court analyze the reasons why the party seeks to proceed anonymously. Under this two-part test, the district court must determine (a) whether an important privacy interest exists (a legal determination), and (b) whether the party displayed a privacy interest of a magnitude sufficient to warrant anonymous filing (a factual determination). 273 Kan. at 940.

*Unwitting Victim* does not support KSU and Reed's position, nor does it compel us to dismiss Doe's appeal. KSU and Reed's citation to federal authority is similarly unavailing since our Supreme Court has chosen a different path for addressing this issue. In Kansas, a party may proceed anonymously at the discretion of the district court. 273 Kan. at 949. Here, the district court struck Doe's petition, rendering the analysis of whether Doe could proceed anonymously unnecessary. Since we have no decision to review, KSU and Reed's challenge to Doe's anonymous proceeding seeks an impermissible advisory opinion, which we will not provide. *Gannon v. State*, 298 Kan. 1107, 1119, 319 P.3d 1196 (2014) ("Kansas courts do not render advisory opinions.").

KSU and Reed's argument on Doe's notice of appeal is similarly unpersuasive. Just like K.S.A. 2020 Supp. 60-210(a) requires pleadings to name all the parties, K.S.A. 2020 Supp. 60-2103(b) requires the notice of appeal to specify the party taking the appeal. KSU and Reed argue this means Doe's use of a pseudonym in his notice of appeal renders it invalid, meaning we have no jurisdiction over his appeal. Once again, they misconstrue both K.S.A. 2020 Supp. 60-2103(b) and the caselaw interpreting it.

KSU and Reed cite *Anderson v. Scheffler*, 242 Kan. 857, 752 P.2d 667 (1988), for the proposition that an appellate court has no jurisdiction to consider an appeal brought by a party who was not named in the notice of appeal. Yet, once again, KSU and Reed overstate the holding in *Anderson*. The issue in *Anderson* was whether a notice of appeal listing the plaintiff as "Jacob Anderson" also conferred jurisdiction over Jacob's brother, James Anderson. The Kansas Supreme Court held it did not, since the notice of appeal did not name or refer to James, and the memorandum decision Jacob appealed from did not affect or refer to James. 242 Kan. at 860-61. That is a different question than the one before us.

Here, we have only one plaintiff, Doe, and there is no question he is the one taking the appeal from the district court decision which directly impacted him. Our Supreme Court has interpreted K.S.A. 2020 Supp. 60-2103(b) to require the party taking the appeal be "named either directly or by inference in the notice of appeal." *Anderson*, 242 Kan. at 861. It has also mandated K.S.A. 2020 Supp. 60-2103(b) must be liberally construed "'to assure justice in every proceeding.'" *Fuller v. State*, 303 Kan. 478, 492, 363 P.3d 373 (2015). Doe was "named by inference" in the notice of appeal.

Kansas courts addressing whether a notice of appeal could confer jurisdiction often focus their analysis, in part, on whether the other party was misled or prejudiced. See *Associated Wholesale Grocers, Inc. v. Americold Corporation*, 293 Kan. 633, 638, 270 P.3d 1074 (2011) (moving party who sought to dismiss based on flaws in notice of

9

appeal "cannot credibly claim that they were misled as to the matter being appealed"); see also *Brueck v. Krings*, 230 Kan. 466, 467, 638 P.2d 904 (1982) (noting other party was not prejudiced). KSU and Reed have not claimed they were misled or prejudiced by Doe's notice of appeal. In fact, they took it upon themselves to use Doe's actual name in their brief, thereby establishing they were not. KSU and Reed provide no basis to dismiss the appeal on jurisdictional grounds.

*The district court appropriately dismissed Doe's claims under Kansas' anti-SLAPP statute.*

Before analyzing the district court's decision, a summary of Kansas' anti-SLAPP statute is appropriate. In 2016, Kansas adopted K.S.A. 60-5320, the Public Speech Protection Act. L. 2016, ch. 58, § 1. It is what is known as an anti-SLAPP statute—statutes intended to prevent meritless lawsuits that chill free speech, known as SLAPPs, or "'strategic lawsuits against public participation.'" *T & T Financial of Kansas City, LLC v. Taylor*, No. 117,624, 2017 WL 6546634, at *3 (Kan. App. 2017) (unpublished opinion).

The Act "provides a procedural remedy early in the litigation for those parties claiming to be harassed by a SLAPP lawsuit." 2017 WL 6546634, at *4. In sum, it allows a party to bring a motion to strike a claim if the claim "is based on, relates to or is in response to [that] party's exercise of the right of free speech, right to petition or right of association." K.S.A. 2020 Supp. 60-5320(d). The Act defines the "exercise" of each of these three rights. K.S.A. 2020 Supp. 60-5320(c)(3)-(5). If the moving party makes a prima facie case showing that a claim concerns the party's exercise of one of these rights, the burden shifts to the other party to establish a likelihood of prevailing on their claim by presenting substantial competent evidence to support a prima facie case. K.S.A. 2020 Supp. 60-5320(d).

10

The stated purpose of the Act is "to encourage and safeguard the constitutional rights of a person to petition, and speak freely and associate freely, in connection with a public issue or issue of public interest to the maximum extent permitted by law while, at the same time, protecting the rights of a person to file meritorious lawsuits for demonstrable injury." K.S.A. 2020 Supp. 60-5320(b). The Legislature mandated the Act's provisions "shall be applied and construed liberally to effectuate its general purposes." K.S.A. 2020 Supp. 60-5320(k).

The district court struck Doe's petition, dismissing his case, because the court found it was based on, related to, or in response to KSU and Heather Reed's exercise of their right of free speech, right to petition, and right of association, as those terms are defined under the Act. Doe does not challenge this finding on appeal. We therefore assume, without deciding, that KSU and Reed have made these showings. Instead, Doe tries to carve out two exceptions to the Act's protections:  (1) he claims the Act does not protect the communication of information which is prohibited from disclosure by FERPA and (2) he claims the Act does not protect the communication of information which is untrue and defamatory.

There are no Kansas cases setting forth a standard for reviewing a district court's decision on a motion to strike under Kansas' anti-SLAPP statute. That said, the process in K.S.A. 2020 Supp. 60-5320(d) is analogous to a summary judgment procedure in that the district court is required to review pleadings and affidavits to determine whether a claim is allowed to proceed as a matter of law. We review summary judgment de novo, looking anew at whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. See *Lehman v. City of Topeka*, 50 Kan. App. 2d 115, 118, 323 P.3d 867 (2014). Further, the Kansas Supreme Court has previously said when matters outside the pleadings are considered, the appropriate standard of review is that of summary judgment. *Fairfax Portfolio LLC v.*

11

*Carojoto LLC*, 312 Kan. 92, 94, 472 P.3d 53 (2020) (discussing review of motion to dismiss in which trial court considered matters outside the pleadings). A de novo standard also seems appropriate when reviewing a district court's grant or denial of an anti-SLAPP motion since we are in the same position as the district court to answer the legal question presented. See *Sell v. Dorian*, No. 117,199, 2018 WL 3320977, at *4 (Kan. App. 2018) (unpublished decision) (noting appellate court is in same position as district court in ruling on legal issues presented in summary judgment motion). Thus, we review the district court's order granting the anti-SLAPP motions to strike de novo.

Additionally, to the extent that our analysis requires interpretation of K.S.A. 2020 Supp. 60-5320, the interpretation of a statute is a question of law over which we have unlimited review. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019). When interpreting a statute, we must first attempt to ascertain legislative intent through the statutory language, giving common words their ordinary meanings. When the language in the statute is plain and unambiguous, we must give effect to the statute's express language rather than determining what the law should be. Further, this court will not speculate about legislative intent or read something into the statute that is not readily found in it. 309 Kan. at 149-50.

*FERPA does not protect Doe's claims from dismissal.*

As noted above, the district court found KSU and Reed made a prima facie case that Reed's e-mail was a communication involving their protected exercise of their right of free speech under Kansas' anti-SLAPP statute. Doe argues FERPA prohibits disclosure of the information in Reed's e-mail and, as such, the Act cannot protect the disclosure as an exercise of a right of free speech. The court also found the e-mail constituted an exercise of KSU and Reed's rights to petition and of association, but Doe does not claim FERPA impacts the exercise of those rights. Yet, in addressing KSU and Reed's exercise

of the right of free speech, Doe misconstrues the scope and purpose of FERPA as well as the plain language of its provisions.

First, FERPA is a federal law enacted under Congress' spending power. It conditions the receipt of federal funds on an educational agency or institution's compliance with certain requirements relating to the access and disclosure of student educational records. *Gonzaga University v. Doe*, 536 U.S. 273, 278, 122 S. Ct. 2268, 153 L. Ed. 2d 309 (2002). The FERPA statute is found at 20 U.S.C. § 1232g, and the FERPA regulations are found at 34 C.F.R. Part 99 (2020). Among other conditions, FERPA restricts federal funding for those educational agencies or institutions who disclose personally identifiable information from educational records without obtaining parental or student consent, unless an exception to consent applies. 20 U.S.C. § 1232g; 34 C.F.R. Part 99.

FERPA creates no private right of action and does not address individual instances of disclosure. *Gonzaga University*, 536 U.S. at 287-88. Federal courts interpreting FERPA have consistently held it does not "absolutely prohibit" the disclosure of educational records, nor does it create a privilege against such disclosure. *Ellis v. Cleveland Municipal School Dist.*, 309 F. Supp. 2d 1019, 1023 (N.D. Ohio 2004); *Bauer v. Kincaid*, 759 F. Supp. 575, 589 (W.D. Mo. 1991); *Rios v. Read*, 73 F.R.D. 589, 598 (E.D.N.Y. 1977); *Bialik v. Huber*, No. 1:12-CV-567, 2013 WL 1499051, at *2 (W.D. Mich. 2013) (unpublished opinion); *Stellwag v. Quinnipiac Univ.*, No. 3:09-CV-1031(AWT), 2010 WL 4823355, at *1 (D. Conn. 2010) (unpublished opinion).

The district court could have dismissed Doe's FERPA argument outright, because Doe has no private right of action under FERPA, and FERPA does not prohibit disclosure of the information in Reed's e-mail. Instead, it chose to point out KSU and Reed did not violate FERPA. Either way, Doe's attempt to use FERPA to escape the motions to strike fails.

13

Doe claims FERPA prohibits disclosure of the information in Reed's e-mail because KSU and Reed (a) failed to follow FERPA's procedures and (b) KSU and Reed cannot satisfy an exception which allows disclosure. But Doe misconstrues FERPA's procedures and attacks the applicability of the wrong exception.

The district court held FERPA allows disclosure of the information in Reed's e-mail under the circumstances set forth in 34 C.F.R. § 99.31(a)(2), which it found KSU and Reed met. These circumstances are:

"(a) An educational agency or institution may disclose personally identifiable information from an education record of a student without the consent required by § 99.30 if the disclosure meets one or more of the following conditions:
. . . .
(2) The disclosure is, *subject to the requirements of § 99.34*, to officials of another school, school system, or institution of postsecondary education where the student seeks or intends to enroll, or where the student is already enrolled so long as the disclosure is for purposes related to the student's enrollment or transfer." (Emphasis added.) 34 C.F.R. § 99.31(a)(2).

The only aspect of the court's ruling which Doe challenges is its finding that KSU and Reed satisfied the requirements of 34 C.F.R. § 99.34 (2020) when making the disclosure. He does not dispute that KSU and Reed's communication otherwise satisfied the conditions of this exception.

According to 34 C.F.R. § 99.31(a)(2), the excepted disclosure must also satisfy the requirements of 34 C.F.R. § 99.34. These requirements are:

"(a) An educational agency or institution that discloses an education record under § 99.31(a)(2) shall:
(1) Make a reasonable attempt to notify the parent or eligible student at the last known address of the parent or eligible student, unless:

14

(i) The disclosure is initiated by the parent or eligible student; or

(ii) The annual notification of the agency or institution under § 99.7 includes a notice that the agency or institution forwards education records to other agencies or institutions that have requested the records and in which the student seeks or intends to enroll or is already enrolled so long as the disclosure is for purposes related to the student's enrollment or transfer;

(2) Give the parent or eligible student, upon request, a copy of the record that was disclosed; and

(3) Give the parent or eligible student, upon request, an opportunity for a hearing under subpart C." 34 C.F.R. § 99.34.

Doe asserts KSU and Reed violated 34 C.F.R. § 99.34(a)(1) because they did not try to notify him before making the disclosure and violated 34 C.F.R. § 99.34(a)(3) because they did not offer him an opportunity for a hearing. Doe is wrong. As the district court noted, KSU and Reed did not violate 34 C.F.R. § 99.34(a)(1) because they satisfied one of the two exceptions to (a)(1)'s requirements—KSU provides the annual notification mentioned in 34 C.F.R. § 99.34(a)(1)(ii). Doe also misconstrues the language of 34 C.F.R. § 99.34(a)(3). The regulation places the onus on the student or student's parent to request a hearing. Doe does not allege he requested a hearing, nor does he allege one of his parents did.

Doe did not address KSU and Reed's defenses to his claim, thus waiving any argument he might have raised on this issue. See *McCain Foods USA, Inc. v. Central Processors, Inc.*, 275 Kan. 1, 15, 61 P.3d 68 (2002) ("'Where the appellant fails to brief an issue, that issue is waived or abandoned.'").

Doe spends considerable time in his brief arguing that another disclosure exception, found in 20 U.S.C. § 1232g(b)(6)(A), does not apply. But since KSU and Reed are not sheltering under the protection of this exception, nor did the district court find it applicable, we see no need to address Doe's arguments. Whether the exception found in

15

20 U.S.C. § 1232g(b)(6)(A) permitted KSU and Reed to disclose the information in Reed's e-mail is immaterial, since KSU and Reed satisfied a different exception permitting disclosure, found in 34 C.F.R. § 99.31(a)(2). Similarly, we need not consider Doe's argument that FERPA preempts Kansas' anti-SLAPP statute, since we find FERPA does not apply and, even if it did, KSU and Reed did not violate it.

FERPA is not analogous to the privileges against disclosure cited by Doe, such as the attorney-client privilege, the doctor-patient privilege, or the federal statutory privilege against disclosure of tax returns. See *Rios*, 73 F.R.D. at 598 (noting FERPA "says nothing about the existence of a school-student privilege analogous to a doctor-patient or attorney-client privilege" and instead "by threatening financial sanctions, it seeks to deter schools from adopting policies of releasing student records"). Rather, it establishes procedures for disclosure of confidential student information, which KSU and Reed followed. Doe's claim that FERPA somehow precludes the district court's finding that KSU and Reed exercised the right of free speech protected by Kansas' anti-SLAPP statute is unavailing. Further, even if we accepted Doe's erroneous position, the court's decision to grant the motions to strike is alternatively supported by its unchallenged finding that Reed's e-mail was a protected exercise of KSU and Reed's right to petition and right of association.

While the district court might have taken a different path to reach the same result, we have no disagreement with its well-reasoned determination that KSU and Reed did not violate FERPA, and thus FERPA's provisions do not impact our analysis of the motions to strike.

*KSU and Reed need not defend against Doe's claims to carry their burden under Kansas' anti-SLAPP statute.*

Doe attacks KSU and Reed's prima facie case under the first step of the district court's two-part analysis by mistakenly claiming KSU and Reed must disprove Doe's allegations to carry their burden. Specifically, he claims KSU and Reed had to establish the information in Reed's e-mail and the notation on the transcript were true. Doe impermissibly heightens KSU and Reed's burden beyond what is required under the Act.

Under the Act, "[a] party bringing the motion to strike has the initial burden of making a prima facie case showing the claim against which the motion is based concerns a party's exercise of the right of free speech, right to petition or right of association." K.S.A. 2020 Supp. 60-5320(d). The statute defines each of these terms. Once again, Doe does not challenge the district court's finding that the e-mail at issue fell within the Act's statutory definitions of the exercise of the right of free speech, the right to petition, and the right of association. Instead, he argues these statutory rights do not include or protect the communication of false statements because defamatory speech is not constitutionally protected. Thus, we focus our inquiry on whether (a) KSU and Reed must prove the information in Reed's e-mail was true as part of their prima facie case to establish the Act applies, and, later, (b) whether Doe has provided substantial competent evidence to support a prima facie case that the information in Reed's e-mail was false.

First, the plain language of the Act reveals the inquiry under the first step is simply whether the asserted claim "concerns a party's exercise of the right of free speech, right to petition or right of association." K.S.A. 2020 Supp. 60-5320(d). The Legislature neutrally described what activity falls within the exercise of those rights and mandated that its provisions "shall be applied and construed liberally to effectuate its general purposes." K.S.A. 2020 Supp. 60-5320(k).

17

Under the Act, "'[e]xercise of the right of free speech' means a communication made in connection with a public issue or issue of public interest." K.S.A. 2020 Supp. 60-5320(c)(4). "'Public issue or issue of public interest' includes an issue related to: (A) Health or safety; (B) environmental, economic or community well-being; (C) the government; (D) a public official or public figure; or (E) a good, product or service in the marketplace." K.S.A. 2020 Supp. 60-5320(c)(7).

"Exercise of the right to petition" has over a dozen possible definitions under the Act. K.S.A. 2020 Supp. 60-5320(c)(5)(A)-(E). The definitions relevant here are: (1) "A communication in or pertaining to: . . . an official proceeding, other than a judicial proceeding, to administer the law"; and (2) "a communication in connection with an issue under consideration or review by a legislative, executive, judicial or other governmental or official proceeding." K.S.A. 2020 Supp. 60-5320(c)(5)(A)(ii), (c)(5)(B). The Act defines "'[o]fficial proceeding'" as "any type of administrative, executive, legislative or judicial proceeding that may be conducted before a public servant." K.S.A. 2020 Supp. 60-5320(c)(9). "'Public servant'" is defined in the statute as "a person elected, selected, appointed, employed or otherwise designated as one of the following, even if the person has not yet qualified for office or assumed the person's duties." K.S.A. 2020 Supp. 60-5320(c)(10). The statute then lists five types of individuals. See K.S.A. 2020 Supp. 60-5320(c)(10)(A)-(E). Those relevant here are "[a]n officer, employee or agent of the government" under (c)(10)(A), and "an arbitrator, mediator or other person who is authorized by law or private written agreement to hear or determine a cause or controversy" under (c)(10)(C). K.S.A. 2020 Supp. 60-5320(c)(10)(A), (C).

"'Exercise of the right of association' means a communication between individuals who join together to collectively express, promote, pursue or defend common interests." K.S.A. 2020 Supp. 60-5320(c)(3).

18

None of these definitions address the motive or merits of a communication; they simply address its content. *T & T Financial of Kansas City, LLC*, 2017 WL 6546634, at *5 (noting "step one of the analysis under K.S.A. 2016 Supp. 60-5320[d] only concerns the content of the claims," and interpreting this to mean whether defendant admits or denies plaintiff's allegations is not relevant to step one). In *T & T Financial of Kansas City, LLC*, another panel of this court addressed a district court's dismissal of an anti-SLAPP motion to strike because the defendant denied making some of the communications set forth in the defamation petition. The district court interpreted the Act to require an "actual exercise" of the rights protected by the Act and, since the defendant denied making some of the communications, the court found the defendant did not actually exercise those rights. 2017 WL 6546634, at *2. In reversing the district court, the panel was persuaded by how California courts answered this question when interpreting the California anti-SLAPP statute (which has a similar two-step process). It noted those courts place the inquiry into the merits of the plaintiff's claim in the second step of the analysis (which addresses plaintiff's likelihood of prevailing on its claim), holding the merits are not implicated in the first step. 2017 WL 6546634, at *5 (citing *Malin v. Singer*, 217 Cal. App. 4th 1283, 1304, 159 Cal. Rptr. 3d 292 [2013], which held that the defendant's assertion that he was innocent of the accused conduct is irrelevant because such an assertion is "'more suited to the second step of an anti-SLAPP motion'"); *City of Costa Mesa v. D'Alessio Investments, LLC*, 214 Cal. App. 4th 358, 371, 154 Cal. Rptr. 3d 698 (2013) ("The merits of [plaintiff's] claims should play no part in the first step of the anti-SLAPP analysis."); *Coretronic Corp. v. Cozen O'Connor*, 192 Cal. App. 4th 1381, 1388, 121 Cal. Rptr. 3d 254 (2011) ("Arguments about the merits of the claims are irrelevant to the first step of the anti-SLAPP analysis."). We see no reason to depart from that panel's analysis.

California courts have routinely rejected arguments much like Doe's by noting that if courts reviewed the merits of a plaintiff's claim in step one of the analysis, then step two would be rendered meaningless:

19

"Fox argues its suit does not fall within the SLAPP statute because Paladino has no First Amendment right to disclose privileged and confidential documents or to refuse to return those documents to Fox, their rightful owner. The same argument could be made by the plaintiff in a defamation suit—the defendant has no First Amendment right to engage in libel or slander. Yet, defamation suits are a prime target of SLAPP motions.

"The problem with Fox's argument is that it confuses the threshold question of whether the SLAPP statute applies with the question whether Fox has established a probability of success on the merits. The Legislature did not intend that in order to invoke the special motion to strike the defendant must first establish her actions are constitutionally protected under the First Amendment as a matter of law. If this were the case then the inquiry as to whether the plaintiff has established a probability of success would be superfluous." *Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal. App. 4th 294, 305, 106 Cal. Rptr. 2d 906 (2001).

See also *Scott v. Metabolife Internat., Inc.*, 115 Cal. App. 4th 404, 419, 9 Cal. Rptr. 3d 242 (2004) (noting court may not "'read a separate proof-of-validity requirement'" in first step of analysis and, instead, "any 'claimed illegitimacy of the defendant's acts is an issue which the plaintiff must raise *and* support in the context of the discharge of the plaintiff's [secondary] burden to provide a prima facie showing of the merits of the plaintiff's case'") (quoting *Navellier v. Sletten,* 29 Cal. 4th 82, 94, 124 Cal. Rptr. 2d 530 [2002]); *Laker*, 32 Cal. App. 5th at 760 (characterizing first step of analysis as "'nexus' requirement," which looks at whether conduct falls within one of the categories set out in California's anti-SLAPP statute). Placing the inquiry into the merits of the plaintiff's case in the second step of the analysis similarly carries out both the language and purpose of the Kansas Act.

Our Legislature did not limit the scope of the Kansas anti-SLAPP statute to activity protected by constitutional law. Instead, just like in California, the Kansas Act "spelled out the kinds of activity it meant to protect," then mandated that its statutory language be liberally construed. *City of Montebello v. Vasquez*, 1 Cal. 5th 409, 421-22, 205 Cal. Rptr. 3d 499 (2016) (discussing parameters of California anti-SLAPP statute). Thus, when examining KSU and Reed's prima facie case, the district court did not need to

address Doe's argument that constitutional rights to free speech, petition, and association do not protect defamatory communication. 1 Cal. 5th at 422 (noting "courts determining whether conduct is protected under the [California] anti-SLAPP statute look not to First Amendment law, but to the statutory definitions in [California's statute]"). It needed only address whether Reed's e-mail fell within the statutory definitions of the Act. The district court found that it did, and Doe does not challenge that determination. Doe's constitutional arguments are just as unavailing on appeal, and he has preserved no objection to the district court's statutory analysis.

As part of Doe's effort to shift his burden to prove the merits of his claim to KSU and Reed, Doe also misinterprets another portion of the Act. He claims it is unfair to require him to establish the merits of his claims, since a plaintiff in his situation has no ability to discover facts or evidence and is limited to the contentions of fact in his petition, citing the generic stay of discovery statutorily imposed once a motion to strike is filed. See K.S.A. 2020 Supp. 60-5320(e)(2). Yet, the Act specifically allows for discovery relevant to the motion to strike, upon a motion and showing of good cause. K.S.A. 2020 Supp. 60-5320(e)(1). It also allows for submitting affidavits to shore up the contentions of fact set forth in a petition. See K.S.A. 2020 Supp. 60-5320(d). This argument fails as well.

Any argument on the merits of Doe's claims was properly addressed in the second step of the court's analysis. We do not find the district court erred in proceeding as such.

*Doe failed to present substantial competent evidence to support a prima facie case establishing a likelihood of prevailing on his claims.*

Doe appropriately notes Kansas' anti-SLAPP statute protects "the rights of a person to file meritorious lawsuits for demonstrable injury." K.S.A. 2020 Supp. 60-5320(b). The Act does not, as he proclaims, "abrogate common law defamation suits."

21

Instead, it, like all anti-SLAPP statutes, is intended to prevent *meritless* lawsuits that chill individuals' exercise of their rights of free speech, association, and to petition. See *T & T Financial of Kansas City, LLC*, 2017 WL 6546634, at *3; *Dorit v. Noe*, 49 Cal. App. 5th 458, 466, 263 Cal. Rptr. 3d. 98 (2020). What Doe overlooks in his argument is his obligation in step two of the court's analysis to establish a prima facie case that his claims have merit and that he has suffered a demonstrable injury.

Doe focused his response to the motions to strike on KSU and Reed's prima facie showing. Indeed, he even argued below "[t]here is no need to analyze the second prong of the two-part analysis, i.e. the merits of Plaintiff's case, because the Defendants have not met the first hurdle of making a prima facie case." And in fact, Doe did not argue the second prong of the test to the district court. He made no effort to address the merits of his claims in his written response, simply making one stray comment about a separate letter from KSU regarding his underlying student disciplinary proceedings which was not mentioned in his petition or any of his claims. And during the hearing, he seemed to walk back the claims asserted in his petition (which only addressed Reed's e-mail and the transcript), characterizing the information in Reed's e-mail as "inaccurate and misleading" and describing the transcript simply as "different than the transcript that was provided to [Doe]."

Doe admits he offered no affidavits to support his claims, instead relying on the allegations in his petition. While this is certainly permissible under the statute (which requires the court to "consider pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based"), his bare-bones petition, standing alone, does not constitute "substantial competent evidence to support a prima facie case" that he is likely to prevail on his claims. K.S.A. 2020 Supp. 60-5320(d). Doe's argument on appeal, that the district court was (a) required to accept the facts in his petition as true and (b) should have found those facts to be substantial competent evidence supporting a prima facie case of his likelihood of prevailing on all his claims, lacks merit.

22

First, Doe's argument hinges on his misunderstanding of the standards governing the district court's analysis of a motion to strike filed under K.S.A. 2020 Supp. 60-5320. He mistakenly claims we must treat K.S.A. 2020 Supp. 60-5320 motions to strike like motions to dismiss, meaning we "'must accept the facts alleged by the plaintiff as true, along with any inferences that can reasonably be drawn therefrom.'" Doe is wrong on both counts.

To begin with, Doe misconstrues the legal authority he cites in support of his position, *Caranchini v. Peck*, 355 F. Supp. 3d 1052 (D. Kan. 2018). *Caranchini*, a federal case interpreting the applicability of a state statute (K.S.A. 2016 Supp. 60-5320) in a federal diversity action, does not suggest that we accept the facts alleged in Doe's petition as true. Doe also takes the parenthetical he cites out of context. The full context of his quoted language is:

> "The court therefore finds that [Kansas' anti-SLAPP statute], although procedural in nature, applies in federal diversity actions because it 'exist[s] to influence substantive outcomes, and . . . is so bound up with the state-created right or remedy that it defines the scope of that substantive right or remedy.' Much like the First Circuit found in *Godin*, [*v. Schencks*, 629 F.3d 79 (2010),] [Kansas' anti-SLAPP statute] *does not substitute Rules 12 and 56* [*of the Federal Rules of Civil Procedure*]*, it merely supplements them* for a narrow category of cases." (Emphasis added.) *Caranchini*, 355 F. Supp. 3d at 1061.

The portion Doe quoted in his brief was about the *Caranchini* court's earlier analysis. In its analysis, the court noted a federal court exercising diversity jurisdiction should not apply a state law if a Federal Rule of Civil Procedure answers the same question as the state law. *Caranchini*, 355 F. Supp. 3d at 1058. The court then discussed how the First Circuit found that Federal Rules of Civil Procedure 12 and 56 do not answer the same question as Maine's similar anti-SLAPP statute, and that the anti-SLAPP statute was not intended as a substitute to the Federal Rules, but rather "'created a supplemental and substantive rule to provide added protections . . . to defendants who are

23

named as parties because of constitutional petitioning activities.'" *Caranchini*, 355 F. Supp. 3d at 1058-59. The *Caranchini* court's statement that Kansas' anti-SLAPP statute "does not substitute Rules 12 and 56, it merely supplements them for a narrow category of cases," meant that Federal Rules of Civil Procedure 12 and 56 did not try to answer the same questions as Kansas' anti-SLAPP statute, and thus the federal court could apply the state law—the anti-SLAPP statute—in the federal diversity action. 355 F. Supp. 3d at 1061. It did not mean that a K.S.A. 60-5320 motion to strike is treated as a motion to dismiss.

The language of Kansas' anti-SLAPP statute shows the allegations in Doe's petition should not be treated as true. Under the Act, once the moving party meets its burden to establish the Act applies to the plaintiff's claim, "the burden shifts to the responding party to establish a likelihood of prevailing on the claim *by presenting substantial competent evidence to support a prima facie case*." (Emphasis added.) K.S.A. 2020 Supp. 60-5320(d). Kansas caselaw provides that "[s]ubstantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion." *Fisher v. Kansas Dept. of Revenue*, 58 Kan. App. 2d 421, 423, 471 P.3d 710 (2020).

The Act specifies that "[i]n making its determination, the court shall consider pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based." K.S.A. 2020 Supp. 60-5320(d); see also *Caranchini*, 355 F. Supp. 3d at 1063 (applying Kansas' anti-SLAPP statute and only considering pleadings and affidavits in second step, when deciding whether responding party met its burden). While the court should examine the pleadings to determine the nature of the claims asserted and should also consider well-pled facts in a petition and any answer (along with any written instruments attached as an exhibit to those pleadings, per K.S.A. 2020 Supp. 60-210[c]), it is not required to accept the facts asserted in the plaintiff's petition as true. Otherwise, no defendant could ever prevail on an anti-SLAPP motion. *DuPont Merck Pharm. Co. v.*

*Superior Ct.*, 78 Cal. App. 4th 562, 568, 92 Cal. Rptr. 2d 755 (2000), *as modified* (January 25, 2000) ("It would defeat the obvious purposes of the anti-SLAPP statute if mere allegations in an unverified complaint would be sufficient to avoid an order to strike the complaint. Substantiation requires something more than that.").

Requiring courts to accept the allegations in a plaintiff's petition as true would render meaningless the language in the Act which requires a court to consider opposing affidavits, as well as its requirement that the party opposing the motion must present substantial competent evidence. Such a reading would violate one of our basic canons of statutory interpretation. *Miller v. Board of Wabaunsee County Comm'rs*, 305 Kan. 1056, 1062, 390 P.3d 504 (2017). Considering the pleadings—which is required—differs from presuming the allegations in the petition are true—which is not required under the Act.

The district court determined Doe did not meet his burden under the Act because he did not show how he could overcome the basis for dismissal argued in KSU and Reed's motion to dismiss, which included a statute of limitations defense. We find the reason for this determination to be in error since the court improperly considered the motions to dismiss. The Act clearly states a court may only consider "pleadings and supporting and opposing affidavits" when making its determination. K.S.A. 2020 Supp. 60-5320(d). A motion to dismiss is not a "pleading" as that term is defined in K.S.A. 2020 Supp. 60-207. However, since we have decided to employ a de novo standard of review to K.S.A. 60-5320 motions to strike, we may independently examine Doe's petition to determine whether it constituted substantial competent evidence to support a prima facie case of his likelihood of prevailing on his claims. We find it does not.

First, as noted above, the only claim Doe argued in response to the motions to strike was defamation. This was presumably based on his mistaken assumption that the motions to strike only addressed the defamation claim. Indeed, he made this unsupported assertion at the hearing and has repeated it in his brief. A plain reading of the motions to

strike reveals they attacked all of Doe's claims, which all arose out of the same e-mail. Since Doe made no effort to argue the merits of any of his claims other than defamation, either to the district court or this court, we only examine the defamation claim on appeal.

The elements of a defamation claim in Kansas include: (1) false and defamatory words (2) communicated to a third person (3) which result in harm to the reputation of the person defamed. *Lloyd v. Quorum Health Resources, LLC*, 31 Kan. App. 2d 943, 952, 77 P.3d 993 (2003). Further, our state requires a plaintiff in a defamation action to allege and prove actual damages; they can no longer rely on the theory of presumed damage. *Zoeller v. American Family Mut. Ins. Co.*, 17 Kan. App. 2d 223, 229, 834 P.2d 391 (1992).

As for the first element, Doe offers nothing other than a conclusory statement that the information in Reed's e-mail and the transcript were "false and defamatory." He provided no specific facts beyond this conclusory statement. "[A] defamation complaint cannot couch allegations of falsity in vague, conclusory terms." *Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1105 (10th Cir. 2017). He does not specify what information was false and defamatory (seemingly including all the information Reed conveyed) nor does he explain what about the transcript notation was false and defamatory. He also separately alleges "upon information and belief" that KSU and Reed "have engaged in a continued long pattern of defamatory conduct against [Doe] since 2010." Once again, he provides no facts to support this generic claim.

While Doe seeks to shelter behind our court's "notice pleading" rules, that is a different standard, applied when answering a different question. Kansas' anti-SLAPP statute requires substantial competent evidence to establish a likelihood of prevailing on his claim. K.S.A. 2020 Supp. 60-5320(d). Allowing Doe to skate by on the theory that "'plaintiffs do not have to establish all possible theories in their initial petition,'" as he

26

claims, would eviscerate the second prong of the court's analysis under K.S.A. 2020 Supp. 60-5320(d) and turn anti-SLAPP motions to strike into a game of whack-a-mole.

We do not find Doe's generic statement that the information in the e-mail and the transcript were false and defamatory constitutes substantial competent evidence to provide a prima facie case on the first element of his defamation claim, as required by the Act. Doe could have cured his deficient pleading by supplementing it with an affidavit, or even sought discovery to search for evidence relevant to the court's determination of the motions to strike. K.S.A. 2020 Supp. 60-5320(e)(1). He did not. In fact, he softened the allegations at the hearing by calling them simply "inaccurate and misleading," which differs from false and defamatory.

Doe also failed to provide substantial competent evidence to support the damages element of his defamation claim. While he generally alleged that he suffered reputation damages, he offered no factual specifics. He failed to explain *how* his reputation was damaged, nor did he even specify an amount of damages he claimed to have suffered. "Conclusory allegations that defendants' reputations have been harmed, with no support in the pleadings, fail to establish a valid claim for defamation." *Rx Savings, LLC v. Besch*, No. 19-2439-DDC, 2019 WL 8014669, at *4 (D. Kan. 2019); see also *Lindemuth v. Goodyear Tire & Rubber Co.*, 19 Kan. App. 2d 95, 103, 864 P.2d 744 (1993) ("However, injury to one's sensitivities alone is not enough to support a claim for defamation. The plaintiff must show how his or her true reputation in the community of his or her residence has been affected."); *Davis v. Hildyard*, 34 Kan. App. 2d 22, 30, 113 P.3d 827 (2005) ("Broad and factually unsupported allegations of patient cancellations do not support a claim for damages for alleged defamation.").

This case is like the situation in *Caranchini*, 355 F. Supp. 3d at 1063. There, the federal court examined a complaint, ultimately finding the plaintiff failed to plead sufficient facts to survive a K.S.A. 60-5320 motion to strike. The court noted, for

27

example, that Caranchini failed to specify what false statements were made about her and failed to allege how the statements damaged her reputation. Doe's petition suffers from the same flaws.

Doe's petition also contains another fatal defect, like the petition in *Caranchini*. There, the court also found that, even if Caranchini had provided substantial competent evidence, the communications at issue were privileged under Kansas law since they were made during litigation. 355 F. Supp. 3d at 1063. Similarly, Reed's communications would be entitled to a qualified privilege as Doe alleges Reed acted in her capacity as an employee of KSU and she was communicating with a representative from another university where Doe was currently enrolled. Kansas recognizes a qualified privilege "with respect to business or employment communications made in good faith and between individuals with a corresponding interest or duty in the subject matter of the communication." *Lloyd*, 31 Kan. App. 2d at 952 (citing *Turner v. Halliburton Co.*, 240 Kan. 1, 8, 722 P.2d 1106 [1986]). And, "'[w]here a defamatory statement is made in a situation where there is a qualified privilege the injured party has the burden of proving not only that the statements were false, but also that the statements were made with actual malice—*with actual evil-mindedness or specific intent to injure*.'" 31 Kan. App. 2d at 952. Doe did not allege Reed acted with malice when responding to the e-mail inquiry from the other university representative, which he would need to show to prevail.

KSU and Reed established Doe's petition stemmed from activity protected under the Act, but Doe failed to produce substantial competent evidence to support his claims. While we find the district court incorrectly relied on KSU and Reed's motions to dismiss in granting the motions to strike, it reached the right result. *Gannon v. State*, 302 Kan. 739, 744, 357 P.3d 873 (2015) ("'If a trial court reaches the right result, its decision will be upheld even though the trial court relied upon the wrong ground or assigned erroneous reasons for its decision.'"). We find Doe preserved no arguments regarding claims other

28

than defamation and, in our de novo review of Doe's pleading, we find that he failed to properly substantiate that claim. The district court properly granted the motions to strike.

*The district court properly dismissed all of Doe's claims.*

Doe alleges the district court improperly dismissed all of his claims, "even though [Doe] argued that the November 26, 2019, K.S.A. 60-5320(d) Anti-SLAPP Motions hearing was 'not a hearing about dismissing all of the claims.'" Yet, simply asserting the hearing was not about dismissing all the claims does not make it so. The motions to strike clearly indicated KSU and Reed sought to strike *all* claims, and that is the position they took at the hearing. All Doe's claims arose out of the same e-mail, and the district court found all the claims, indeed the petition itself, related and reacted to KSU and Reed's exercise of the right of free speech, right to petition, and right of association under K.S.A. 2020 Supp. 60-5320(d).

Doe claims he was given short shrift, since he had not yet responded to the motions to dismiss. But he misses the point of the second step in the anti-SLAPP analysis. Doe needed to establish a prima facie case of the merits of all his claims, which he failed to do. He mistakenly argues the dismissal was improper because there was no "factual record negating any element of [Doe's] claims." Yet, KSU and Reed did not have to negate Doe's claims—he needed to provide a prima facie case of their merit. Once again, he improperly applies the standard of review for a motion to dismiss, by arguing the court was required to accept his allegations as true. As noted above, this is not the standard for evaluating claims facing a motion to strike under K.S.A. 60-5320.

Doe's recurring attempt to rely on our court's notice pleading rules is unavailing here as well, because, as noted above, notice pleading cannot survive the second step of the court's analysis under K.S.A. 2020 Supp. 60-5320. And while he again claims he was

denied discovery, in truth, he failed to avail himself of his statutory right to discovery to defend against the anti-SLAPP motions.

Doe's claims that he was improperly denied his right to a jury trial and due process also have no merit. Nor did the district court improperly "invade[] the province of the jury," as Doe alleges. Under K.S.A. 2020 Supp. 60-5320, Doe needed to substantiate his claims. If he had presented the required prima facie case, the court would have had to deny the motion to strike, and his case could have proceeded. K.S.A. 2020 Supp. 60-5320(d). He did not carry his burden on any of his claims, and the district court properly struck them.

Affirmed.